2005 VT 83

## Raymond Gallipo v. City of Rutland

[882 A.2d 1177]

No. 04-041

Present: **Reiber, C.J., Dooley, J., and Grearson, D.J., Allen, C.J. (Ret.), and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed July 29, 2005

*Andrew Jackson,* Middlebury, for Plaintiff-Appellant.

*Joseph A. Farnham* and *Kevin J. Coyle* of *McNeil, Leddy & Shea-han,* Burlington, for Defendant-Appellee/Cross-Appellant.

¶ 1. **Dooley, J.** Plaintiff, Raymond Gallipo, appeals a superior court order granting summary judgment to defendant, City of Rutland, on plaintiff's retaliatory discrimination claims, and defendant appeals the court's order dismissing its unjust enrichment counterclaim. Plaintiff argues that the court erred in (1) accepting defendant's requests to admit as fact and denying plaintiff a renewed chance to respond; (2) admitting defendant's statement of undisputed facts in its summary judgment motion for plaintiff's failure to comply with Rule 56(c)(2); and (3) determining that collateral estoppel applied to the workers' compensation proceedings. Defendant argues that the trial court erred in precluding it from recovering temporary workers' compensation benefits paid to plaintiff. We affirm both appeals.

¶ 2. The parties appear before this Court for the sixth time. See *Gallipo v. City of Rutland,* 173 Vt. 223, 225-26, 789 A.2d 942, 945 (2001) [hereinafter *Gallipo V*] (chronicling facts and procedural history of dispute). They have been involved in litigation for over fifteen years surrounding plaintiff's claims of discrimination against his former employer, the City of Rutland, where he worked as a firefighter. In 1995, a jury rendered a verdict in plaintiff's favor, finding that the City discriminated against plaintiff by refusing to promote him because of his religious practices and a learning disability. After this verdict, plaintiff continued to work for the City's fire department and in 1998 began this action.

¶ 3. This litigation is best viewed in two phases. The first began when plaintiff filed a complaint under the Vermont Fair Employment Practices Act, 21 V.S.A. §§ 495-496 (VFEPA), naming as defendants the City of Rutland and its fire chief, Gerald Lloyd, and claiming that, in response to his success in the previous trial, the City engaged in unlawful retaliatory employment practices. Plaintiff alleged that these practices included subjecting him to heightened scrutiny, resentment, withholding of computer privileges and training, denial of funeral leave, videotaping him at a training class, denial of workers' compensation, denial of sick leave credits and constant criticism and shunning.

¶ 4. Plaintiff particularly complained of an incident on September 13, 1996, when a fire department trainer attempted to videotape a training session at which plaintiff was present. Following a heated exchange with the person who was instructed to video the session, plaintiff left the training and did not return to work. Plaintiff claims that he was being targeted by the taping and that the incident caused him great stress. Defendant counters that the taping was routine, done for the benefit of those who could not attend, and not personally aimed at plaintiff.

¶ 5. Plaintiff never returned to work after the taping incident and on the day of the incident filed a workers' compensation claim alleging that he suffered anxiety and depression as a result of his treatment at the fire department. He articulated four stressors that caused his mental injury: ongoing ridicule from fellow firefighters; use of profane language by other employees; lack of a computer password to perform his role as computer specialist; and the confrontation over the video-taping. The Commissioner of Labor and Industry awarded interim benefits to plaintiff while his claim was pending. Ultimately, the Commissioner denied this claim, concluding that "plaintiff had failed to prove that the mental injury he alleged was caused by work-related stresses from any of the four specified events." *Gallipo V*, 173 Vt. at 226, 789 A.2d at 945.

¶ 6. During discovery, defendants deposed plaintiff on January 19, 1999 and thereafter served requests for admission on March 1, 1999. V.R.C.P. 36. Defendants then filed a motion for summary judgment on March 3, 1999. Although plaintiff responded to the summary judgment motion, he never submitted answers to the requests to admit. The superior court granted summary judgment on April 19, 2000, concluding that the fire chief was immune from suit and that the workers' compensation action exclusivity clause prevented plaintiff from bringing his employment discrimination action. Plaintiff appealed, and we

affirmed the first ground and reversed the second. *Gallipo V*, 173 Vt. at 239, 789 A.2d at 954. As a result of our decision, fire chief, Gerald Lloyd, was dismissed as a defendant, and the action proceeded solely against the City. This ended the first phase of the litigation.

¶ 7. The second phase commenced with the remand to the superior court. Plaintiff sought successfully to amend his complaint to allege that he was terminated by defendant as part of its retaliatory actions against him. The motion to amend was ultimately granted in October 2002. Meanwhile, defendant filed three motions for summary judgment as follows: (1) the first alleged that based on the undisputed facts — particularly those shown by defendant's requests to admit in phase one of the litigation and its statement of undisputed facts in support of its summary judgment motion — defendant was entitled to judgment as matter of law on plaintiff's discrimination claims; (2) the second alleged, as discussed below, plaintiff's claims were barred by the preclusive effect of the Commissioner of Labor and Industry's decision; and (3) the third sought reimbursement for temporary workers' compensation benefits the City paid to plaintiff.

¶ 8. Defendant's issue preclusion argument was based on the fact that on July 12, 2000, the Commissioner of Labor and Industry denied plaintiff's workers' compensation claim because she found that none of the alleged stressors created stress greater than that for other employees. Following the Commissioner's decision, defendant counterclaimed against plaintiff seeking reimbursement of temporary workers' compensation benefits paid to plaintiff under an interim order requiring the City to pay benefits while plaintiff's claim was pending. Defendant argued that reimbursement was appropriate under a theory of unjust enrichment and moved for summary judgment, the third motion described above, for the return of $67,413 plus interest in August 2002.

¶ 9. In response to defendant's first summary judgment motion, plaintiff relied upon a statement of contested facts filed in 1999 and attached new affidavits, and an "additional statement of contested material facts" based upon the affidavits. He also requested permission to submit untimely answers to the March 1, 1999 requests to admit. The court denied plaintiff's request to allow a renewed chance to respond and further held that plaintiff had failed to file a proper statement of disputed material facts as required by Rule of Civil Procedure 56(c)(2). Because of the civil rule violation, the court deemed defendant's statement of undisputed material facts as

admitted. It did not, however, grant summary judgment on this record alone; instead the court combined this first motion with the second one.

¶ 10. The court's decision on the second summary judgment motion parallels its decision on the first. Again, it held that plaintiff had failed to comply with Rule 56(c)(2) when he filed new material in response to the motion and held, as a result, that defendant's statement of undisputed facts was deemed admitted. It also ruled that the Commissioner of Labor and Industry's decision on plaintiff's claim for workers' compensation preclusively established the same facts.

¶ 11. Combining the undisputed facts established by plaintiff's admissions, and those submitted in support of the two motions, the court held that defendant was entitled to judgment as a matter of law on all of plaintiff's claims. Specifically, the court held that since "plaintiff did not suffer a compensable stress-related injury arising out of the course of his employment and that his perceived mistreatment was subjective," plaintiff's discrimination claim could not go forward.

¶ 12. The court denied the third summary judgment motion, under which defendant sought return of the amounts paid as temporary workers' compensation benefits based on a theory of unjust enrichment. The court concluded that, even if defendant's claim could be maintained on a theory of unjust enrichment, the facts did not support application of the theory because defendant failed to file medical evidence in opposition to plaintiff's supported motion for interim benefits. Thus, the court reasoned that defendant slept on its rights, and plaintiff was not unjustly enriched. This appeal and cross-appeal followed.

## I.

¶ 13. We first address plaintiff's argument that the court erred in granting defendant summary judgment on plaintiff's retaliation claim. On appeal, we review summary judgment de novo and use the same standard as the trial court. *Springfield Terminal Ry. v. Agency of Transp.*, 174 Vt. 341, 344, 816 A.2d 448, 451 (2002). We will affirm if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3); *Springfield Terminal Ry.*, 174 Vt. at 344, 816 A.2d at 451. All reasonable doubts and inferences are resolved in favor of the nonmoving party, and "[s]ummary judgment is required when, after adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to her

case upon which she has the burden of proof." *Doe v. Forrest*, 2004 VT 37, ¶ 9, 176 Vt. 476, 853 A.2d 48.

¶ 14. Although there are some differences over the applicable substantive law, the main issues before us involve the factual record on which the court based its summary judgment decision. Plaintiff asserts on appeal that the factual record should include the affidavits, documents and statements of contested material facts he submitted in opposition to defendant's motions for summary judgment, and that these show conclusively that there are disputed issues of material fact that prevent grant of summary judgment. Defendant counters that the only facts that can be considered are those in its request to admit of March 1, 1999, its two statements of undisputed facts of July 31 and September 2, 2002, and the decision of the Commissioner of Labor and Industry of July 12, 2000. Defendant further asserts that these facts show that there are no undisputed material facts and it is entitled to summary judgment as a matter of law. The trial court agreed with both of defendant's assertions in its grant of summary judgment.

¶ 15. Before we delve into the questions about the proper composition of the record we put these questions in context by examining the underlying substantive law. To survive summary judgment, plaintiff must present facts sufficient for a prima facie case that the City retaliated against him after he won the discrimination law suit. VFEPA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has lodged a complaint of discriminatory acts or practices." 21 V.S.A. § 495(a)(5). Under VFEPA, the standard and burdens of proof are identical to those under Title VII and, thus, plaintiff "bears the initial burden of establishing, by a preponderance of the evidence, a prima facie case of retaliation." *Beckmann v. Edson Hill Manor, Inc.*, 171 Vt. 607, 608, 764 A.2d 1220, 1222 (2000) (mem.). To establish a prima facie case for retaliatory discrimination, plaintiff must show that: (1) he was engaged in a protected activity; (2) his employer was aware of that activity; (3) he suffered adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 42, 176 Vt. 356, 848 A.2d 310; see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (outlining prima facie elements for a discrimination claim under Title VII). Plaintiff's burden at this stage is relatively light. *Carpenter v. Cent. Vt. Med. Ctr.*, 170 Vt. 565, 566-67, 743 A.2d 592, 596 (1999) (mem.).

¶ 16. Both parties agree that plaintiff engaged in a protected activity and that defendant was aware of that activity. Defendant disputes that there was an adverse employment action attributable to it, and if so, that there was a causal connection between the adverse action and the protected activity. Plaintiff claims that he suffered an adverse employment action when he was criticized, shunned and scrutinized by other firefighters, denied funeral leave and computer training, threatened to.be videotaped, and ultimately terminated.[1] He asserts that defendant is responsible for these adverse employment actions and they were taken to retaliate against him for his victory in his first employment discrimination suit.

■ ¶ 17. Under Title VII, an adverse employment action for retaliation is generally an "act or harassment [that] results in an adverse effect on the 'terms, conditions, or benefits' of employment." *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001). Such actions may include "refusal to hire or rehire, a delay in reinstatement, a disadvantageous transfer or assignment, . . . a demotion, refusal to promote, refusal to transfer or to give a deserved pay raise or bonus, a suspension, discharge, [or] constructive discharge." 2 L. Larson, Employment Discrimination § 34.04, at 34-53 to 34-56 (2d ed. 2004) (footnotes omitted) (citing cases). Some courts recognize that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999). We have never explicitly adopted this view, but, if applicable, we have noted that it would require more than derogatory comments by co-workers. *Beckmann*, 171 Vt. at 609, 764 A.2d at 1223-24. The City contends that plaintiff's own admissions establish that none of the alleged harmful acts are specific enough to constitute an adverse employment action and, further, none are traceable to the City.

---

[1] On September 25, 2002, plaintiff filed a motion to amend his complaint and add an allegation of discriminatory discharge. The court granted the motion, but requested that an amended complaint be filed. Plaintiff filed this amended complaint on January 7, 2003, and defendant filed a motion to strike on January 21, 2003, arguing that the claim in the amended complaint was different from that articulated in the original motion. The court never ruled on the motion. On appeal, defendant argues that plaintiff abandoned his unlawful termination claim by failing to raise the issue on appeal. Because we find no merit to the claim, *infra*, we do not reach whether plaintiff properly presents this issue on appeal.

¶ 18. We return to defining the proper record for defendant's summary judgment motions on plaintiff's claims. The issue is somewhat confusing because there are four separate statements from which defendant gleans undisputed facts — the two statements of undisputed facts, the requests to admit and the Commissioner's decision — and three different rationales for relying upon them. Further, it appears that no individual statement deals with all of plaintiff's claims. Finally, none deal directly with plaintiff's termination from employment with defendant.

¶ 19. The three rationales for considering the fact record defendant submits are: (1) the factual statement is contained in a request to admit which is deemed admitted because plaintiff failed to respond to it in time; (2) the factual statement is contained in defendant's statement of undisputed facts, which must be accepted because plaintiff failed to properly respond; and (3) the factual statement is in the Commissioner's workers' compensation decision and is binding on plaintiff through collateral estoppel. We address each rationale in order, summarizing how each establishes which facts. Because of our disposition of the first two rationales, we do not reach the third.

¶ 20. The first rationale arises from requests to admit filed on March 1, 1999 during the first phase of the litigation. The requests were filed shortly after defendant took the deposition of plaintiff to further bind plaintiff to responses defendant viewed as concessions that most of plaintiff's claims lacked merit. The requests asked, among other items, that plaintiff admit the following:

> [Aside from the videotaping incident] you are unable to offer any specific incident of retaliatory discrimination attributable to any specific individual, that occurred subsequent to the jury trial . . . .
> [Aside from the videotaping incident] you are unable to offer any specific incident of job information being withheld from you attributable to any specific individual, that occurred subsequent to the jury trial . . . .
> [Aside from the videotaping incident] you are unable to offer any specific incident of denial of funeral leave to you attributable to any specific individual, that occurred subsequent to the jury trial . . . .

The other items subject to the same general language were "any specific incident of heightened scrutiny," "any specific incident of criticism or shunning of you for your religious beliefs," "any specific inci-

dent of resentment displayed toward you," and "any specific incident of berating or criticizing you for your civil rights claim."[2]

¶ 21. Rule of Civil Procedure 36 provides that a matter for which an admission is requested "is admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter." V.R.C.P. 36(a). Further, a matter admitted pursuant to Rule 36 is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." V.R.C.P. 36(b). It is undisputed that plaintiff never submitted responses to defendant's requests to admit. Due to plaintiff's nonresponse, the trial court admitted the requests as fact. Plaintiff contends that the requests should not be deemed admitted because the grant of summary judgment in phase one of this litigation mooted the requests, the requests were not renewed following remand, and there is no prejudice to defendant if plaintiff responds now.

¶ 22. We find plaintiff's arguments without merit and agree with defendant that the requests must be deemed admitted due to plaintiff's failure to respond. We initially note that courts may grant summary judgment based on unanswered requests to admit. *Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D. Pa. 1975). In this case, plaintiff presents no valid reason that his failure to respond should not be deemed an admission. The record does not support plaintiff's argument that the requests were moot because summary judgment was granted. Over a year passed between the date the requests were first served on plaintiff, March 1, 1999, and the date that the trial court granted defendant summary judgment, April, 19, 2000. Thus, plaintiff had a full opportunity to respond within the thirty-day time limit, and during that year he had no reason to believe that the requests would be mooted by a grant of summary judgment. Further, although a request to delay making a response pending resolution of the summary judgment motion may have been reasonable, plaintiff was required to make such a request to the trial court, and he did not do so. See V.R.C.P. 36(a); *United States v. Kasuboski*, 834 F.2d 1345, 1349-50 (7th Cir. 1987) (rejecting the defendant's argument that failure to respond to requests for admission should be

---

[2] The requests also requested that plaintiff admit certain facts with respect to the videotaping incident. These admissions are relatively unimportant because of facts about the videotaping incident considered *infra*.

excused as parties were close to settlement because the defendant failed to file a motion to toll the response period).

■ ¶ 23. In addition, the law does not support plaintiff's contention that defendant had a duty to renew the requests after remand. Once defendant served the requests, it remained plaintiff's obligation to respond. See *Freed*, 66 F.R.D. at 553 (noting that responding party has "an affirmative duty" to respond to motion for requests to admit). Neither Rule 36 nor any of our decisions supports plaintiff's burden-shifting argument.

■ ¶ 24. Finally, we conclude that the court did not abuse its discretion in denying plaintiff an opportunity to amend his admissions. Although Rule 36 empowers the court to grant a party leave to amend admissions, we review a trial court's decision to "permit the withdrawal or amendment of an admission for abuse of discretion." *Am. Automobile Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991). Plaintiff did not respond to defendant's initial requests for over three years, and even after defendant filed for summary judgment on September 5, 2002, based on the admissions, plaintiff did not request permission to respond until October 9, 2002, more than thirty days later. Under these circumstances, it was well within the court's discretion to deny plaintiff a renewed opportunity to refute the statements in the admissions.

■ ¶ 25. Plaintiff argues that the court should have granted him leave to withdraw the admissions because defendant would not be prejudiced. This statement misconstrues the court's obligations under the rule. See V.R.C.P. 36(b) ("[T]he court *may* permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." (Emphasis added.)). The court is obligated to examine prejudice only if it exercises discretion to allow untimely answers, not, as here, where it declines to do so. See *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663, 666 (N.D.W. Va. 1975) (articulating rule that where courts grant leave to amend, "the court must consider whether permitting answers out of time would prejudice the requesting party"). Furthermore, in this case, requiring defendant to now prove matters in those admissions, especially when defendant relied on them for summary judgment, would result in prejudice. See *id.* at 666-67 (noting that the language and spirit of the rules of civil procedure require courts to

consider the burdens on litigants that have properly complied with the rules to advance a quick and inexpensive result).

¶ 26. The second rationale for accepting defendant's factual statement is that plaintiff failed to comply with Rule 56(c)(2) and, as a result, defendant's statements of undisputed facts must be accepted and plaintiff's contrary assertions must be ignored. The trial court invoked this rationale with respect to two separate statements of undisputed facts. The first was submitted, along with the requests to admit considered above, in connection with defendant's first summary judgment motion. See *supra,* ¶ 7. While the statement of undisputed facts included the admitted facts pursuant to the request, it went further and included other facts defendant alleged were undisputed. For example, the statement included facts with respect to the videotaping incident, specifically that plaintiff objected to the videotaping because the fire chief was out to get him "and this was something that he could put on film," other training events not involving plaintiff could have been videotaped, and plaintiff had no basis for believing that he would have to do anything at the training session other than sit and listen to the instructor. It included that "[p]laintiff could not think of any incident or conversation that allegedly occurred after the verdict in the first trial in which Chief Lloyd influenced or attempted to influence any fire department personnel to not associate with or talk to plaintiff."

¶ 27. The second statement was submitted in connection with defendant's second summary judgment motion, and presented the court with the findings of the Commissioner of Labor and Industry. Defendant argued that plaintiff was bound by the findings by collateral estoppel, but also included these findings in a statement of undisputed material facts. Among the findings were the following:

> 24. Plaintiff's perception that his coworkers were shunning him seems to be intertwined with his allegation that their use of profanity was designed to harass him. . . . [N]either plaintiff nor [his witness] could identify specific firefighters' names or particular instances when "shunning" occurred. Without more specificity and objectivity, plaintiff cannot sustain his burden of proving that his sense of being ostracized was significant and objectively real. The facts amply support [the independent psychologist's ] . . . conclusion that any mistreatment plaintiff felt was from his subjective perception, not objective facts.

25. Similarly, the plaintiff fails to offer any conclusive proof that the profane language was directed specifically at him, was a conscious effort to harass him, or was an objectively real stress.... It cannot be concluded ... that the profane language was anything more than a normal, routine, albeit distasteful, practice. Even when the language was not directed at him, plaintiff interpreted its use as criticism and being shunned for his religious beliefs, when that was clearly not the case....

26. The problem plaintiff had with the computer is less clear.... [T]he work was not central to plaintiff's work as a firefighter and no adverse consequences followed his lack of computer access....

27. ... Despite the plaintiff's protestations and objections, however, there was no objective evidence that as a student in the class he would have been videotaped. He reacted to a perceived, not an objective, stressor. Furthermore, the credible evidence shows that the confrontation between [the employee operating the videotape equipment] and the plaintiff was no more than typical firehouse banter that became heated. Once again, that the situation was perceived as stressful stemmed from plaintiff's personal worries, not from objective facts. The videotaping incident was one that is typical in today's work world, including the Rutland Fire Department, where a lesson needs to be preserved for future viewing. All those in the class were to sit in a room where the instructor was to be videotaped....

....

29. The facts and medical opinions prove that plaintiff believes that he suffered a mental injury as a result of work place stresses that were of a greater dimension than the daily stresses encountered by all employees. However, the expert opinions in support of his claim raise no more than a possibility, surmise or speculation that this is so. The more probable hypothesis is that plaintiff's mental injury is a result of forces independent of the work place and not from work-related stresses that were of a significantly greater dimension than the daily stresses encountered by other firefighters.

¶ 28. Plaintiff responded to the two statements of undisputed material facts with the same approach. In response to the first summary judgment motion, plaintiff relied upon a statement of contested facts filed in April 1999 in phase one of the litigation, three new affidavits, testimony in another proceeding and an excerpt from a deposition. The statement of contested material facts made no mention of defendant's statement of uncontested material facts, was not organized to respond to defendant's filing, and cited only to the attachments to the response to defendant's motion. The use of the April 1999 statement as a response particularly raised a red flag because at the time of its filing in phase one of this litigation, the trial judge rejected it as not complying with Rule 56(c)(2) as follows:

> There is such a discrepancy between the manner in which the respective statements of (un)disputed facts are laid out that the court cannot reasonably determine whether or not there are disputes over material facts related to the claims in defendant's motion . . . . Plaintiff shall have until September 24, 1999 to file a responsive, amended statement of disputed facts that tracks the facts set forth in defendants' statement of undisputed facts, using the same paragraph numbers for the same subject matter, and clarifying whether or not the facts are disputed. Failure to do so will result in defendants' statement of facts to be deemed to be admitted. V.R.C.P. 56(c)(2).

At the second phase of litigation, defendant responded to plaintiff's attempt to resubmit this statement by arguing that plaintiff again failed to comply with Rule 56(c)(2) and defendant's statement of undisputed facts must be deemed admitted. It also argued that plaintiff had violated his discovery obligations, plaintiff was bound by his deposition statements, plaintiff was raising new claims not contained in his complaint, and the new "facts" were "conclusory or speculative." Plaintiff never filed a response to the City's arguments.

¶ 29. Plaintiff's response to the second summary judgment motion followed the same pattern. Again, the statement of material disputed facts did not reference defendant's statement of undisputed facts. It also raised new issues. For example, four paragraphs described how defendant processed plaintiff's workers' compensation claim including a general claim that the fire chief "handled plaintiff's workers' compensation claim with an intent to discriminate." Defendant filed a response urging that its statement of undisputed facts must be

deemed admitted for failure to comply with Rule 56(c)(2), and that plaintiff was improperly raising new claims not covered by his complaint. Plaintiff also did not file a response to these arguments.

¶ 30. The law underlying the dispute over the statements of facts related to the summary judgment motion is contained in Rule 56(c)(2), which provides:

> Additional Material to be Filed by Moving and Opposing Parties. There shall be annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends that there is no genuine issue to be tried. The opposing party shall include with the affidavits and memorandum filed under paragraph (1) a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. The statements of material facts required to be served under this paragraph shall consist of numbered paragraphs and shall contain specific citations to the record.

Defendant argued, and the trial court held, that plaintiff violated the second sentence of the subsection by not filing "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." The trial court reasoned that "[t]he purpose of Rule 56(c)(2) is not served if the court is required to review not only the parties' statements of material facts, but also the entire record, in determining whether a genuine issue of material fact exists." This rationale is consistent with the purpose, as explained in the Reporter's Notes to the amendment creating the requirement:

> The purpose of the new provision is to focus more directly the arguments on motions for summary judgment by requiring specifications by the parties as to the facts that they contend either are or are not in dispute. The rule seeks to change the present practice under which generalized claims as to whether material facts may be in dispute are frequently presented on motions for summary judgment.

Reporter's Notes to 1995 Amendment, V.R.C.P. 56(c).

¶ 31. This case is similar to *Schulz v. Serfilco, Ltd.*, 965 F.2d 516 (7th Cir. 1992), an age discrimination case decided under a local district court rule very similar to our Rule 56(c)(2). In responding to the defendant's motion for summary judgment in *Schulz*, the plaintiff failed to controvert the defendant's proposed undisputed fact that age was not a factor in the defendant's dealing with the plaintiff. *Id.* at 518. The trial court granted summary judgment to the defendant holding that, as a result of the plaintiff's failure, the plaintiff was bound by the fact and it defeated the plaintiff's claim. *Id.* The court of appeals affirmed over the plaintiff's objection that his statement of facts clearly showed that a material dispute of fact existed as to the extent age was a factor in the defendant's actions. *Id.* at 520. Finding that the plaintiff had not specifically responded to the defendant's proposed fact, that the trial courts had strictly applied the rule, and that the court of appeals had in earlier decisions upheld strict application of the rule, the court held that the rule required "both denial and support for that denial" and that the district court had discretion to strictly apply the rule. *Id.* at 519.

¶ 32. As in *Schulz*, we understand from plaintiff's filings that he is unhappy with defendant's statements of undisputed facts, but it will take extensive work to determine what he has effectively controverted and what he has not controverted. As in *Schulz*, his arguments to us stress that his statements, *independent of those submitted by defendants*, show that there are disputed issues of material fact that preclude summary judgment against him on any of his claims. As in *Schulz*, he resists any obligation to respond directly to defendant's statement of undisputed facts. Meanwhile, as defendant's response argues, there were serious questions about whether plaintiff met his discovery obligations under the rules, questions that were difficult to reach with the state of the record presented to the trial court. Further, plaintiff's claims appeared to shift grounds and theories with each separate filing, making it difficult for defendant and the court to address all of them.

¶ 33. We recognize that unlike the Seventh Circuit Court of Appeals we have no history of requiring strict application of Rule 56(c)(2) to put counsel on full and fair notice of what is expected. We have, however, in the past precluded litigants from disputing facts that they failed to properly dispute in a statement of undisputed facts. See *Travelers Ins. Cos. v. Demarle, Inc.*, 2005 VT 53, ¶¶ 6, 9, 178 Vt. 570, 878 A.2d 267 (mem.) (precluding plaintiff from relying on a comment in the record that was not alleged in its statement of disputed material

facts); *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 834 A.2d 37 (admitting facts from the defendant's statement of undisputed facts where the plaintiff failed to controvert them). In addition, in this case, the trial court gave plaintiff ample notice of what it expected and why. Not only did plaintiff's counsel continue to file fact statements that did not comply with the court's instructions, he continued to rely on a specific fact statement that the trial court had earlier rejected as noncomplying. We think that under the circumstances the court acted within its discretion in invoking the third sentence of Rule 56(c)(2) deeming as admitted the facts in defendant's statements because plaintiff did not controvert them.

¶ 34. Finally on this point, we are mindful of the *Schulz* court's advice:

> Still, all need not have been irretrievably lost. Schulz, through his attorney, might have asked the district court for leave to amend or, perhaps, supplement his response; a motion could have been brought under Fed.R.Civ.P. 59(e) to alter the court's order granting summary judgment .... We have not been advised that any such resuscitation was attempted; certainly, no such relief was granted.

965 F.2d at 520. Over fifteen months went by between the time when defendant first raised plaintiff's noncompliance with Rule 56(c)(2) and the date of the court's summary judgment decision. At no time during this lengthy period did plaintiff ever respond to the allegation that he failed to comply with the rule or amend his filing to respond. He has argued to us that if the rule provided as defendant argued he "would be happy to follow it," but he never made that argument to the trial court. Thus, defendant's position that plaintiff did not comply with Rule 56(c)(2) was unopposed. Further, after the summary judgment was granted he did not file a motion to amend. Even if the result can be deemed harsh in this case, we must conclude that plaintiff forewent the opportunity to avoid a harsh result.

¶ 35. Because we have ruled that the facts contained in defendant's statements of undisputed facts must be taken as admitted pursuant to Rule 56(c)(2), we do not need to reach the alternative ground that some of the facts are binding upon plaintiff because they were found by the Commissioner of Labor and Industry in the workers' compensation proceeding to which plaintiff was a party. As we stated above, defendant included each of the Commissioner's findings of fact in its state-

ment of undisputed facts filed with its second motion for summary judgment.

¶ 36. Before we consider the effect of the factual record on the issue of whether plaintiff has established a prima facie case, we must address the loose end of plaintiff's complaint amendment alleging that plaintiff was ultimately terminated from employment with defendant in retaliation for his successful VFEPA judgment. The court allowed the complaint amendment on October 10, 2002, after defendant had filed its three summary judgment motions and plaintiff had responded to them. The complaint as amended stated in paragraph 30 that defendant's discriminatory and retaliatory conduct made plaintiff's return "to employment impossible." It went on in paragraph 31 to state that plaintiff was terminated eighteen months after he last worked, and in paragraph 32 that the termination was wrongful in that it was done in furtherance of defendant's discrimination and retaliation against plaintiff. The complaint further stated in paragraph 30 that plaintiff suffered "losses, damages, emotional harm, embarrassment, [and] humiliation" as a result of the termination.[3] The termination is not mentioned in any of the factual statements that we have held must be deemed to have been admitted by plaintiff. The only explanation in the record for the termination is in a letter dated March 11, 1998, and attached to plaintiff's statement of disputed facts for defendant's second summary judgment motion. That letter indicates that plaintiff was laid off because he did not return to work after eighteen months and remained on workers' compensation status. It also indicates that under the union contract plaintiff could return to work within six months of the layoff if he provided a doctor's certificate that he was fit for regular duty.

¶ 37. Plaintiff raised no issue with respect to the termination count in his brief. Apparently out of concern that the termination count will remain despite the superior court's summary judgment decisions, defendant has urged us to address it and hold that plaintiff has impliedly abandoned the claim. In his reply brief, plaintiff responded that the termination count is covered by the judgment of the superior court and has not been abandoned, but he made no argument that its coverage in the final judgment is improper. Consistent with plaintiff's position, we

---

[3] Defendant filed a motion to strike the amended complaint arguing that its content differed from that contained in the motion. The superior court never specifically acted on this motion. The court did say in its decision that all other pending motions were either found to be without merit or were mooted by the decision.

conclude that the superior court intended to end this case in its entirety and cover the termination count in its final judgment. This conclusion is particularly logical given plaintiff's presentation of the termination. Plaintiff stated that he cannot return to work as a result of defendant's action up to and including the videotape injury and the subsequent handling of the workers' compensation claim. Thus, plaintiff's complaint amendment appears to mention the termination not as a separate act of discrimination or retaliation, but as a consequence of defendant's alleged retaliation and discrimination. Consequently, it was consistent for the superior court to dismiss this count along with the others.

¶ 38. In view of our rulings on the factual record, we reach the question of whether plaintiff has made out a prima facie case of retaliation and discrimination. As we stated above, defendant contested that plaintiff could show that he suffered an adverse employment action or that there was a causal connection between the adverse employment action, if it existed, and the protected activity. Although the trial court did not specify the grounds for its decision, it apparently agreed with defendant's position. In fact, plaintiff has appealed the rulings on the requests to admit, statements of facts and collateral estoppel, but has not argued that if we affirm on these issues the summary judgment decision is nevertheless erroneous. We agree that based on the facts in the requests for admission and statements, plaintiff cannot support a prima facie case for retaliatory discrimination.

¶ 39. Plaintiff's case is based on inferences to be drawn from a number of incidents, coupled with a climate of hostility in reaction to plaintiff's earlier discrimination judgment. The second statement of undisputed facts, based on the workers' compensation decision, particularly deprives plaintiff of the ability to draw favorable inferences in support of his case from three incidents or series of incidents. These are incidents on which plaintiff has especially relied: (1) the videotaping incident, (2) the pervasive use of profanity by other firefighters, and (3) the denial of the computer password. As to the more general, and less emphasized, allegations, plaintiff's inferences are blocked in large part by his admissions that he was unable to offer "any specific incident" of the following: "retaliatory discrimination," "heightened scrutiny," "criticism or shunning," "resentment," "job information being withheld," "denial of funeral leave," or "berating or criticizing" any of which was "attributable to any specific individual." Also his case is greatly impeded by the statement of undisputed facts, which states that, other than the taping, plaintiff cannot describe any

incident, after the trial, of retaliatory discrimination attributable to any specific individual and "[p]laintiff could not think of any incident or conversation that allegedly occurred after the verdict in the first trial in which Chief Lloyd influenced or attempted to influence any fire department personnel to not associate with or talk to plaintiff." Plaintiff is left with evidence that the mayor and fire chief, and many firefighters, still believed that plaintiff's discrimination judgment was wrong, and they were unrepentant. He cannot show, however, that he suffered any adverse employment action as a result of retaliation for his protected activity. Because plaintiff is unable to establish a prima facie case under the facts by which he is bound, the court properly granted defendant summary judgment on the merits of plaintiff's case.

## II.

¶ 40. Next we address defendant's claim that the court erred in dismissing its counterclaim for unjust enrichment. Defendant argues that interim workers' compensation benefits and a supplemental salary it paid to plaintiff during the pendency of his claim should be returned because the Commissioner found plaintiff's claim was without merit. The trial court found that although defendant conferred a benefit upon plaintiff, defendant also caused the delay that prompted the Commissioner to grant interim benefits. Thus, the court concluded that defendant could not bring an equitable claim for compensation because "the results complained of [were] induced by [the City's] own conduct."

¶ 41. Under the doctrine of unjust enrichment, a party who receives a benefit must return the payment if retention would be inequitable. *Brookside Memorials, Inc. v. Barre City*, 167 Vt. 558, 559, 702 A.2d 47, 49 (1997) (mem.). Unjust enrichment applies if "in light of the totality of the circumstances, equity and good conscience demand" that the benefitted party return that which was given. *Id.* at 560, 702 A.2d at 50. Defendant alleges that it conferred a benefit upon plaintiff when it made interim workers' compensation payments and that it would be unjust to allow plaintiff to retain that benefit because the Commissioner ultimately found plaintiff's claim was without merit.

¶ 42. We initially point out that, as defendant notes, the workers' compensation statute does not address the question of interim-payment reimbursement. Under our statutory scheme, if an employer denies benefits and the employee applies for a hearing, the Commissioner "may review the evidence upon which denial is based and if the evidence does not reasonably support the denial, the commissioner may order that payments be made until a hearing is held and a

decision is rendered." 21 V.S.A. § 662(b). In this case, when the Commissioner examined defendant's opposition to paying plaintiff benefits, defendant had not submitted any medical documentation supporting denial and, consequently, the only medical evidence was the report from plaintiff's doctor. Not surprisingly, the Commissioner found that this evidence did not "reasonably support the denial," and ordered defendant to pay interim benefits. At the formal hearing, defendant did produce medical expert testimony which the Commissioner found credible, and the Commissioner concluded that plaintiff was not entitled to benefits.[4]

¶ 43. We are met first by plaintiff's argument that the adjudication of a claim for the reimbursement or return of benefits is in the exclusive jurisdiction of the Commissioner, and such a claim, under any theory, cannot be adjudicated by the superior court. Plaintiff relies upon the exclusive-remedy statute, 21 V.S.A. § 622 ("[T]he rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of the employee . . . ."), as interpreted in *Demag v. American Ins. Cos.*, 146 Vt. 608, 610, 508 A.2d 697, 698 (1986). The plain language of the provision, however, limits its application to employee claims against employers, the fact situation present in *Demag*, and that is not the type of claim that is asserted here. See *Lorrain v. Ryan*, 160 Vt. 202, 211, 628 A.2d 543, 549 (1993) (noting that "the exclusivity provision bars the employee's tort recovery only with respect to claims against the employer"); see also *Reil v. State Comp. Mut. Ins. Fund*, 837 P.2d 1334, 1336 (Mont. 1992) (holding that the exclusivity provision of the workers' compensation statute does not prevent actions for restitution because it is aimed at employee actions).

---

[4] Defendant argues that if reimbursement of interim benefits is not granted after an employer prevails at a formal hearing, then the right to a hearing under 21 V.S.A. § 663 is rendered meaningless, and produces an absurd result the Legislature could not have intended. The Legislature did not, however, provide for reimbursement of interim benefits, but established a guideline for granting interim benefits. This construct is reasonable especially given the remedial purpose of the statute, and as explained *infra*, we will not go beyond the statutory bounds. Further, when interim payments are granted, a ruling for the employer after the formal hearing removes any future payment obligation. Therefore, we cannot say that the entire purpose of the hearings is rendered meaningless.

■ ¶ 44. A better theory that closer fits the facts before us is primary jurisdiction, which we explored in detail in the workers' compensation context in *Travelers Indemnity Co. v. Wallis*, 2003 VT 103, ¶¶ 9-18, 176 Vt. 167, 845 A.2d 316. We held in *Travelers* that primary jurisdiction prevented a workers' compensation carrier from challenging the constitutionality of the Commissioner's administration of interim benefits without first exhausting remedies available from the Commissioner. *Id.* ¶ 8. In reaching this conclusion we used the three factors developed in *C.V. Landfill, Inc. v. Environmental Board*, 158 Vt. 386, 610 A.2d 145 (1992), to determine whether primary jurisdiction should be invoked: (1) whether the question to be decided is one of law or is a mixed question of fact and law; (2) whether an alternative tribunal with expertise is available to adjudicate the controversy; and (3) whether the plaintiff is attacking the validity of a statute. *Id.* at 389-92, 610 A.2d at 146-48. Primarily because the issue involved a mixed question of fact and law, and that the Commissioner had the authority under the workers' compensation statute along with the expertise to decide the issue, we held in *Travelers* that primary jurisdiction applied. 2003 VT 103, ¶¶ 11, 13.

■ ¶ 45. The *C.V. Landfill* factors do not point consistently in the same direction when applied to this case, but we conclude that the doctrine of primary jurisdiction does not prevent the superior court from adjudicating defendant's counterclaim. The main question before us is purely one of law — whether reimbursement or return of benefits paid is available on a theory of unjust enrichment. Even if we go beyond this question, the standards involved are derived from the common law of unjust enrichment, law developed by court decision and not through the expertise of an administrative agency. See *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305-06 (1976) (declining to refer matter to administrative board where legal issue involved common-law principles of tort law). As noted above, the workers' compensation statute contains no authorization for the reimbursement of benefits paid under an interim order, and no standards for the exercise of discretion in determining whether to allow reimbursement. We are already in a proceeding between the parties; moving to another forum is inefficient. See *Rohr Indus., Inc. v. Washington Metro. Area Transit Auth.*, 720 F.2d 1319, 1326-27 (D.C. Cir. 1983) (reversing district court's application of primary jurisdiction because among other things it would require further delay). These circumstances suggest that primary jurisdiction should not apply here.

¶ 46. On the other hand, we recognize that the Commissioner has adjudicated at least one other case where the employer sought to recoup benefits, see *Conrad v. Central Vermont Hosp.*, Op. No. 28-01WC, at 5 (Sept. 14, 2001), and that defendant could have raised the issue in the compensation adjudication and chose not to do so. While the availability of an administrative forum supports the application of primary jurisdiction, we conclude that such a circumstance would become determinative only if we had already ruled that reimbursement was available and defined the standards for its exercise. Equipped with such standards, it would be far more efficient to have the agency determine reimbursement at the time of the compensation adjudication, particularly because the issue would be a mixed question of law and fact even under the common-law standards. Where we are presented with a purely legal question, we conclude that the superior court is the proper forum for adjudication. Particularly, as discussed *infra*, there is no set of facts that would support defendant's theory in this case. See *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 419 (5th Cir. 1976) (enumerating situations when application of primary jurisdiction is inappropriate including when no set of facts would change a clear violation of federal law).

¶ 47. Thus, we address the question of whether defendant's theory of unjust enrichment applies and reimbursement is available on this theory. We note that other states are split on this issue when no statute authorizes a right of reimbursement. Defendant cites cases from a few jurisdictions in which, it asserts, the courts recognize an employer's right on a theory of unjust enrichment to receive reimbursement of workers' compensation benefits that were erroneously paid. See, e.g., *Ill. Graphics Co. v. Nickum*, 639 N.E.2d 1282, 1293-94 (Ill. 1994) (allowing recovery of voluntary payments if made because of a mistake of fact); *Montgomery v. Abex Corp.*, 602 A.2d 290, 291-92 (N.J. Super. Ct. App. Div. 1992) (holding that employer entitled to determination of unjust enrichment on remand for miscalculated overpayments); *Moore v. N. Am. Van Lines*, 462 S.E.2d 275, 276 (S.C. 1995) (holding that upon reversal of judgment, employer has a right to reimbursement of benefits based on unjust enrichment). The circumstances under which these courts allow recovery are limited, and, of the cited cases, only *Moore* addresses the question of whether payments can be reimbursed after a judgment is reversed.

¶ 48. On the other hand, many more jurisdictions hold that courts cannot create a right to reimbursement within a wholly statutory area of law where a legislature chose not to do so. These jurisdictions deny

any restitution for claims originally granted and then reversed on appeal. See, e.g., *Tompkins v. George Rinner Constr. Co.*, 409 P.2d 1001, 1004 (Kan. 1966) (concluding that "in view of the provisions of the compensation act general rules relating to 'restitution' have no application and that 'recovery back' is not to be permitted"); *Am. Mutual Ins. Cos. v. Murray*, 420 A.2d 251, 252 (Me. 1980) (per curiam) (explaining that court should not create a right to restitution in an entirely statutory area of the law with broad social policy implications); *St. Paul Fire & Marine Ins. Co. v. Treadwell*, 283 A.2d 601, 605-06 (Md. Ct. App. 1971) (concluding that because statute allows no stay of payments pending appeal and does not contain repayment provision, it would be contrary to legislative intent for employer to recover payments under theory of unjust enrichment); *Ransier v. State Indus. Ins. Sys.*, 766 P.2d 274, 276-77 (Nev. 1988) (holding that allowing restitution would conflict with the liberal construction of the workers' compensation law to protect workers); *In re Johner*, 643 P.2d 932, 935 (Wyo. 1982) (holding that the district court had no authority to order recovery of benefits where not provided for in the statute).

██ ¶ 49. In examining our workers' compensation statute, we cannot find a legislative intent to grant employers such a reimbursement right. Although we recognize that defendant did confer a benefit upon plaintiff when it made interim payments pursuant to the Commissioner's order, we also note that plaintiff did not commit any wrongdoing to receive these benefits. We, therefore, decline to create this right where the Legislature has been silent. See *Gintof v. Husky Injection Molding*, 2005 VT 8, ¶ 8, 177 Vt. 638, 868 A.2d 713 (mem.) (noting that the Court will not extend benefits beyond that which the Legislature provided). In so holding, we echo the concerns voiced by courts in other states that, in an area of law created entirely through statutory enactment, we are hesitant to create rights where the Legislature chose not to do so. As the Maine Supreme Judicial Court explained:

> Whether, when the worker has lost on appeal, the beneficent purposes of our workers' compensation law would be frustrated by a rule requiring repayment of benefits paid pursuant to the [statutory mandate] is a question to be addressed by the legislature. To attempt to resolve this question by engrafting upon the statutory scheme judicially created doctrines of restitution would involve us in the establishment of broad social policy in a field of law created by the legislature

.... We are not asked to construe the Workers' Compensation Act; rather, we are asked to establish policy in this uniquely statutory field when the legislature has deliberately elected to remain silent. In the absence of an express legislative command or a clear indication of legislative intention, we leave the parties where the legislature left them.

*Murray*, 420 A.2d at 252. Denying employers a right to collect payments under interim orders maintains the delicate balance that the Legislature designed in the workers' compensation arena.

¶ 50. Defendant further submits that if reimbursement is not granted in this case, it would be deprived of its right to legal recourse under Chapter I, Article 4 of the Vermont Constitution, because the formal hearing would be rendered useless. We find no merit to defendant's argument. Article 4 states that "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character ...." Vt. Const. ch. I, art. 4. We have explained that Article 4 "protects recourse to the judicial process"; it does not grant substantive rights. *Levinksy v. Diamond*, 151 Vt. 178, 197, 559 A.2d 1073, 1086 (1989), *overruled on other grounds by Muzzy v. State*, 155 Vt. 279, 583 A.2d 82 (1990).

¶ 51. The statute grants interim payments only in cases where the evidence does not "reasonably support the denial." The statute does not provide employers with a right to reimbursement of these payments, but ensures access to a formal hearing where both employer and employee have a full opportunity to litigate questions of eligibility. The hearing determines whether payments will be made prospectively, not whether they should have been granted in the interim period. Consequently, the hearing has a purpose other than to provide the employer with reimbursement. Further, this scheme provides defendant with several procedural protections. Defendant's ability to be reimbursed for the interim payments concerns a substantive right rather than a procedural one, and Article 4 does not convey such rights. *Id.* The Legislature has chosen not to grant this right and there is no constitutional obligation to do so. See *Fleury v. Kessel/Duff Constr. Co.*, 149 Vt. 360, 363-64, 543 A.2d 703, 705 (1988) (concluding that Legislature's decision to grant employee attorneys' fees was reasonable and did not deny employer constitutional protection).

¶ 52. Finally, defendant explains that one-fourth of the money it paid to plaintiff was disbursed pursuant to the collective bargaining

agreement, and therefore, its right to reimbursement is independent of the workers' compensation scheme. The City does not develop this argument and raises the issue for the first time in its responsive brief; therefore, we conclude that it was not adequately preserved and do not address it. See *Bigelow v. Dep't of Taxes*, 163 Vt. 33, 37-38, 652 A.2d 985, 988 (1994) (reiterating that issues not raised in an original brief may not be raised for the first time in reply brief).

*Affirmed.*