Osier v. Burlington Telecom, No. S1588-09 CnC (Toor, J., May 11, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
CHITTENDEN COUNTY

FRED OSIER, et al.,
 Plaintiffs

 v.

BURLINGTON TELECOM, et al.,
 Defendants

SUPERIOR COURT
Docket No. S1588-09 CnC

RULING ON MOTION TO DISMISS

This case involves challenges to the use of funds by Burlington Telecom and the City of Burlington, as well as the City Treasurer. Burlington Telecom ("BT") has filed a motion to dismiss the claims against it.[1] BT argues that the Public Service Board has jurisdiction over the issues before the court, and that pursuant to the doctrine of "primary jurisdiction" this court should decline jurisdiction. BT also argues that as a subdivision of a municipality, it does not have the capacity to be separately sued.

Relevant Facts

The Amended Complaint alleges that BT is "an 'enterprise fund' of the City of Burlington," the latter being a municipality chartered by the State of Vermont. Amended Complaint ¶ 3. It further alleges that the City Charter was amended in 2000 to allow the City to create BT but required that the Public Service Board "ensure that any and all losses . . . are borne by the investors in such business, and in no event are borne by the city's taxpayers." Id. ¶ 6. The complaint goes on to state that (1) in 2005 the Public Service Board issued a Certificate of Public Good ("Certificate") authorizing the City to

---

[1] At the time the motion was filed, Burlington Telecom was the only defendant. Plaintiff has since amended the complaint to add the City and the Treasurer as defendants. Those defendants have not filed motions to dismiss.

establish BT to provide cable, internet and telecommunication services in the City, (2) the Certificate allows BT to make certain payments only if it has met certain financial goals, and (3) BT has violated that requirement, referred to as "Condition 60." Id. ¶ ¶ 9-12, 16, 18, 21, 26-30. Thus, Plaintiffs allege that BT converted City funds in violation of the Certificate and the City Charter.

Conclusions of Law

I. Primary Jurisdiction

BT's first legal argument is that the Public Service Board ("PSB") has "primary jurisdiction" and therefore this court should decline to exercise jurisdiction. Primary jurisdiction is a legal doctrine that "cautions courts against exercising jurisdiction when an alternative tribunal with expertise in the subject matter is available to decide the dispute." Travelers Indemnity Co. v. Wallis, 2003 VT 103, ¶ 13, 176 Vt. 167 (internal quotation omitted). It "applies where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of [an] administrative body." Golden Hill Paugussett Tribe v. Weicker, 39 F.3d 51, 58-59 (2d Cir.1994). It takes into account "the importance of prior adjudication by administrative bodies" in areas for which they have been given oversight by the Legislature. Travelers, 2003 VT 103, ¶ 13, quoting C.V. Landfill, Inc, v. Environmental Board, 158 Vt. 386, 389 (1992). It allows a court:

> to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight. Specifically, courts apply primary jurisdiction to cases

2

involving technical and intricate questions of fact and policy…

National Communications Ass'n v. AT & T, 46 F.3d 220, 222-23 (2d Cir.1995). "The doctrine enables a court to 'refer' such issues to the relevant agency and then stay the proceedings or dismiss the case without prejudice." Verizon New York Inc. v. Global NAPS, Inc., 463 F. Supp. 2d 330, 339 (E.D.N.Y. 2006). The doctrine is not a mandatory one; it is one left to the discretion of the court. Id.[2]

The Vermont Supreme Court has developed three factors to consider in determining whether to invoke the primary jurisdiction doctrine.[3] Gallipo v. City of Rutland, 2005 VT 83, ¶ 44, 178 Vt. 244. The first is whether the question to be decided is "one of law or is a mixed question of fact and law." Id. While such distinctions have always seemed somewhat malleable to this court, the general idea is that the administrative tribunal should be given the first crack at issues requiring fact-finding.

The issue of whether Condition 60 has been violated appears to be undisputed. Complaint, ¶ 27 ("In September, 2009, BT notified the [PSB] that it was in violation of Condition 60"). That issue, therefore, will likely demand no fact-finding. However, the issue of what should be done about it is a much more fact-intensive inquiry. As evidenced by the fact that Plaintiffs were prepared to present testimony from financial experts at the

---

[2] "Strictly speaking, this doctrine is not truly jurisdictional; rather, it concerns the orderly relationship between administrative and judicial decision making." Village of Deerfield v. Commonwealth Edison, No. 2-08-0917, 2010 WL 1394875, *6 (Ill. App. 2d Dist., March 30, 2010). "A main tenet behind its invocation has traditionally been, not merely that an agency has 'expertise,' but the need to coordinate in an orderly and sensible manner the work of agencies and courts." State of North Carolina v. Dep't of Health, Education and Welfare, 480 F. Supp. 929, 935 (D.N.C. 1979).

[3] Other courts use a different four-factor test. See, e.g., National Communications Ass'n, 46 F. 3d at 222-23 (federal courts usually consider "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made."). It is not apparent why Vermont has veered off on a different course.

preliminary injunction hearing, to determine whether BT's actions "are likely to place Burlington taxpayers at further risk" such that injunctive relief is required will require review and analysis of financial records and fact-finding about the impact of BT's actions upon the City's financial condition. Id. ¶ 53. Thus, this factor weighs in favor of deferring to the PSB, which is expressly tasked with assuring that taxpayers such as Plaintiffs are not impacted.

The second factor to consider is "whether an alternative tribunal with expertise is available to adjudicate the controversy." Gallipo, 2005 VT 83, ¶ 14. It is undisputed here that the PSB has both the right and the obligation to oversee BT's spending. *See*, Amended Complaint ¶6 (PSB is directed to "ensure that any and all losses … are borne by the investors … and in no event are borne by the city's taxpayers"). Moreover, part of the relief sought here is to have BT repay all outstanding funds to the City's pooled cash management system. Id. ¶ 36. Although Plaintiffs argue that the PSB does not have the authority to address repayment, that does not appear to be accurate. The amended complaint itself alleges that the PSB has "called on BT to repay its debt to the City of Burlington immediately." Id. ¶ 29. This second factor, therefore, also counsels in favor of deference to the PSB.[4]

The third factor to consider is "whether the plaintiff is attacking the validity of a statute," which would counsel in favor of the court retaining jurisdiction. Gallipo, 2005 VT 83, ¶ 14. No such attack is involved in this case. Thus, the relevant factors all point to the wisdom of allowing the PSB to address the claims against BT before the courts weigh in. As the Supreme Court noted in Travelers, "[n]othing in the amended complaint

---

[4] Plaintiffs also argue that the PSB has no authority to address the claims against Leopold. This is presumably true, but he is not the party seeking dismissal here. The claims against him remain pending in this case regardless of whether BT is dismissed.

4

suggests why we should bypass the responsibility and expertise of the [PSB]." 2003 VT 103, ¶ 15.

Although Vermont case law does not discuss it, other courts have noted the importance of another significant factor in the analysis of whether primary jurisdiction should be invoked. That is "whether there exists a substantial danger of inconsistent rulings." National Communications Ass'n v. AT & T, 46 F.3d 220, 222 (2d Cir.1995). Here, that possibility looms large. Because the PSB is tasked with assuring that BT does not violate Condition 60 or become a financial burden upon the taxpayers of Burlington, its role is to monitor and supervise BT's financial doings. In the course of that ongoing supervision – which, according to the scheduling order submitted to the court, includes hearings this month – it will undoubtedly be faced with questions identical to those being presented to this court, such as those regarding the impact upon the taxpayers of the $17 million expenditures and whether further expenditures will burden the taxpayers. The possibility that the PSB and this court could reach inconsistent conclusions on such questions weighs heavily in favor of deferral to the PSB before the court wades into the fray.

An underlying question, however, is whether the *Plaintiffs* here have a right to be heard in the PSB proceedings. Although the Vermont cases do not discuss this issue, the court sees it as significant. It is one thing to say that the general subject matter of this case is before the PSB: it is another to say that the parties here also have a right to be heard there. The parties have not briefed in detail the scope of the PSB's authority, but it is apparent from the submissions to the court that parties with an interest in PSB proceedings do have an opportunity to petition for intervention in the proceedings. *See*,

5

Scheduling Order, Ruling on Motion to Intervene and Request for Comments, Docket No. 7044 (PSB, Nov. 24, 2009) (attachment to Motion to Dismiss). Thus, it appears that Plaintiffs can seek from the PSB the right to be heard in those proceedings. Although BT seeks dismissal of the claims against it, the court therefore finds more appropriate the other alternative supported by the case law: a stay to permit Plaintiffs to seek participation in the PSB process. *See, e.g.*, Verizon, 463 F. Supp. 2d at 339 (court can "stay the proceedings or dismiss the case without prejudice"); Telecom International America, Ltd., v. A T & T Corp., 67 F. Supp. 2d 189, 219 n. 35 (S.D.N.Y. 1999) ("The proper procedure is for the … Court to stay the matter, and one of the parties to the litigation files a complaint with the [administrative agency].").

## II. Capacity to Sue and Be Sued

BT's second ground for dismissal is its claim that as a municipal agency it does not have the capacity to be sued.  "Generally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority." 56 Am. Jur. 2d Municipal Corporations, Counties and Other Political Subdivisions, § 787 (West, Westlaw through May 2009). Examples of entities not usually able to sue or be sued are police departments, fire departments, and city water departments. Id.

However, the record before the court does not adequately establish BT's formal legal status. The complaint refers to BT as an "enterprise fund" of the City, but that term is undefined. Amended Complaint ¶ 3. Although it was orally represented to the court at a hearing that BT is in essence a subdivision of the City, that oral representation is an

insufficient basis on which to rest dismissal. The issue is more appropriately addressed in a summary judgment context, with a more complete factual record on this issue.

Order

The court denies BT's motion to dismiss, but instead stays the claims against BT to allow Plaintiffs to apply for intervention in the PSB proceedings. If intervention is denied, BT may apply for termination of the stay. If intervention is granted, the stay will remain in place pending resolution of the related issues before the PSB. As the motion to dismiss was filed only by BT, the claims against the City and Leopold are not affected by this order. As discussed at the status conference on April 16, another status conference will be scheduled after June 15 pursuant to the stipulated preliminary injunction against the City.

Dated at Burlington this 11th day of May, 2010.


_____
Helen M. Toor
Superior Court Judge

7