## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Environmental Division Unit | Docket No. 157-12-16 Vtec |

Costco Act 250 Permit Amend JO

### Decision on NRB Motion for Summary Judgment

This is the latest of many appeals related to Costco Wholesale Corporation's ("Costco") plans to expand an existing wholesale retail store in Colchester, Vermont. In this matter, R.L. Vallee, Inc. ("Vallee") appeals an Act 250 Jurisdictional Opinion issued by the District 4 Environmental Commission Coordinator ("District Coordinator") which concludes that alterations to Costco's stormwater system and associated stormwater permit are not a material change to the proposed project, and therefore do not require an Act 250 permit amendment.

The pending appeal is predated by a long procedural history. We recite the following procedural summary to provide context for the current appeal and the legal issues raised by the pending pre-trial motions.[1]

In 2007, Costco announced its intention to expand its existing members-only discount retail store.[2] The developed property is located between Hercules Drive and Lower Mountain View Drive in the Town of Colchester, Vermont. The expansion plans call for Costco to expand its existing retail facility, add motor vehicle gasoline sales facilities, reconfigure a portion of its parking lots, especially near its proposed gasoline sales facilities, and realign and expand upon its stormwater treatment system. The proposed expansion plans require several municipal, state agency, and Act 250 permits, all of which Costco applied for and nearly all of which were appealed

---

[1] There are four separate pre-trial motions pending in this appeal. This Decision addresses only one of the pending motions: the request on behalf of the Vermont Natural Resources Board ("NRB") that the Court enter summary judgment on the sole legal issue posed by Vallee and affirm the jurisdictional Opinion issued by the District Coordinator. Each of the three other motions is addressed by three separate Entry Orders, all of which are also issued today.

[2] This Costco property was originally permitted and developed in 1992.

to this Court. In fact, a total of twelve appeals were initially presented to this Court concerning Costco's planned expansion.[3] The Court coordinated the pending appeals for pre-trial discovery and trial. In the course of trial preparations, the parties were able to dispose of seven of the pending appeals through settlement. The remaining five appeals went to trial before this Court in June and July of 2014.[4]

After trial, this Court issued a Merits Decision and Judgment Order that (a) affirmed the reclassification of the Lot 5 wetland as a Class II wetland; (b) affirmed ANR's approval of Costco's plans to encroach into a portion of the buffer surrounding the Lot 5 wetland that was already encroached upon by the pre-existing development, conditioned upon Costco's pledge to improve upon its stormwater treatment system; and (c) affirmed the municipal and state land use approvals (including Act 250 approval) for Costco's proposed expansion plans. See In re Costco Stormwater Discharge Permit, et. al., Nos. 75-6-12 Vtec, 104-8-12 Vtec, 132-10-13 Vtec, 41-4-13

---

[3] (1) In re Costco & Lake Champlain Trans Corp Wetlands Determination, No. 24-2-12 Vtec (concerning an appeal from an ANR wetland conditional use determination);

(2) In re Costco Preliminary Plat Application, No. 13-1-12 Vtec (concerning an appeal from a Town of Colchester Development Review Board ("DRB") preliminary plat determination);

(3) In re Costco Stormwater Construction Permit, No. 181-12-11 Vtec (concerning an appeal from an ANR stormwater permit determination);

(4) In re Costco Act 250 Land Use Permit, No. 143-7-09 Vtec (concerning an appeal from the District 4 Environmental Commission ("District Commission") determination on a limited state land use application);

(5) In re Costco Final Plat Application, No. 113-6-09 Vtec (concerning an appeal from a DRB final plat determination);

(6) In re Costco Stormwater Permit (No. 414-9015.1), No. 60-4-09 Vtec (concerning an appeal from an earlier ANR stormwater permit determination);

(7) In re Costco PUD/Preliminary Plat Application (Appeal of R.L. Vallee), No. 21-2-09 Vtec (concerning an appeal from a Colchester DRB PUD determination on an earlier municipal permit application);

(8) In re Costco Stormwater Discharge Permit Application (Permit No. 4114-9015.2), No. 75-6-12 Vtec (concerning an appeal from an ANR approval of Costco's planned improvements to its existing stormwater treatment systems);

(9) In re Costco Final Plat & Site Plan Amendment Application, No. 104-8-12 Vtec (concerning an appeal from the DRB's approval of Costco's revised final plat and site plan application);

(10) In re Wetlands Reclassification Petition, No. 132-10-13 Vtec (concerning Timberlake's petition to reclassify a wetland, identified at trial as the "Lot 5 wetland," from Class III to Class II);

(11) In re Costco Act 250 Land Use Permit Amendment Application, No. 41-4-13 Vtec (concerning an appeal from District Commission Act 250 Permit, Findings of Fact, and Conclusions of Law (LUP No. 4C0288-19C) on Costco's amended state land use application); and

(12) In re Costco Individual Wetlands Permit (Permit No. 2013-189), No. 59-5-14 Vtec (concerning an appeal from ANR's determination authorizing Costco's planned encroachment into a portion of the Lot 5 wetland 50-foot buffer).

[4] The five appeals that remained for the Court to address at trial are items 8 through 12, above.

Vtec, and 59-5-14 Vtec (Vt. Super. Ct. Envtl. Div. Aug. 26, 2015) (Durkin, J.) (hereinafter referred to as the "Merits Decision"). Those determinations were affirmed by the Vermont Supreme Court. See In re Costco, 2016 VT 86 (August 5, 2016).

The Merits Decision addresses the stormwater appeal (Permit No. 4114-9015.2, docketed in this Court at 75-6-12 Vtec) by finding that Costco's planned improvements to its stormwater treatment system called for stormwater to receive improved treatment by the time it flows into several treatment ponds, including what were identified as Wet Pond #1 and Wet Pond #2. Merits Decision at 22. The portion of Costco's new stormwater treatment system that concerns the currently pending appeal would collect stormwater from various sources and allow that stormwater to go through several treatment systems before being further treated and collected in Wet Pond #1. Id. The treated stormwater would then flow from Wet Pond #1 into an identified water of the state: Sunnyside Brook. Id. At our 2014 trial, Costco proposed that some of the treated stormwater would flow from Wet Pond #1 via an 8" underground pipe. Id. The underground pipe would then discharge the treated stormwater through an outlet structure and into Sunnyside Brook. Id. Both the outlet structure and a portion of the underground pipe would be within fifty feet of the Lot 5 wetland, although neither would encroach into the wetland itself. Id.

These proposed structures did not violate the applicable wetland rules when the Lot 5 wetland was classified as an unprotected Class III wetland. However, when the Lot 5 wetland was reclassified as a protected Class II wetland, such structures could only encroach into the protected wetland buffer if ANR issued an encroachment permit.

To minimize the impacts that this underground pipe would have on the now-protected wetland buffer, Costco proposed to install the pipe via directional underground drilling, rather than surface excavation. Id. This construction proposal, together with the fact that Costco's new treatment system would now eliminate the flow of untreated stormwater directly into the now-protected Lot 5 wetland, led to our conclusion that the proposed pipe and outlet structure would have no more than minor adverse impacts upon the wetland, its buffer, and its important functions and values. Id. at 34–35. In fact, we concluded that Costco's treatment plans would have a "beneficial" impact on the quality of water that flowed into the nearby streams. Id. at 32.

Stormwater that collects in Wet Pond #1 would receive improved treatment and be retained in that Pond for a longer period of time under the improved stormwater treatment plan. Further, the regular flow of treated stormwater out of Wet Pond #1 would be restricted by a smaller, 3" outlet from the Pond. Id. at 22.

The purpose of the additional 8" outlet pipe was to release treated stormwater once the level of the water in the Pond is heightened by regular, significant rain storms, often classified as "one-year storm events." Id. at 20. The 8" pipe would be above the regular 3" pond outlet; the treated stormwater, travelling through the 8" underground pipe by gravity, would then be discharged into Sunnyside Brook. Id. at 22.

Costco's proposed stormwater treatment system also called for a third outlet for treated stormwater from Wet Pond #1, above the previously described 3" outlet and 8" pipe outlet. This third outlet would allow for treated stormwater to be discharged when the level of treated water in Wet Pond #1 rises even further, due to more significant "ten-year storm events." In such events, Wet Pond #1 would contain such stormwater for treatment, then allow for the flow of treated stormwater via a channel and into a pre-existing, man-made drainage ditch, alongside Mountain View Drive. That pre-existing drainage ditch is within the delineation of the reclassified Class II wetland on Lot 5, but the ditch has banks above the wetland surface level which restrict the treated stormwater from entering the wetland, including during significant storm events, such that the treated stormwater flows through the drainage ditch. In fact, this ditch has operated to transport stormwater into Sunnyside Brook for decades; there was no evidence presented at our prior trials that the ditch allows the stormwater it has transported to enter into the wetland.

Costco's proposed stormwater treatment system included a variety of new components to treat stormwater, including cleaned and deepened treatment ponds, dry swales, trench drains, catch basins, multiple underground storage tanks that serve as oil and grit separators, and floating separators called "snouts" and "oil hoods" that remove grit, floating items, and oil from the stormwater. Id at 21. All of this treatment would be completed before the stormwater reached the outlet pipes and man-made drainage ditch.

Based on these factual findings, we affirmed ANR's issuance of a stormwater permit in Docket No. 75-6-12 Vtec. Id. at 51.

In its appeal of our Merits Decision to the Vermont Supreme Court, Vallee asserted that it was improper for this Court to approve the encroachment of the outlet structure and underground pipe into the Lot 5 wetland buffer, and that the Supreme Court must direct that Costco's Wetlands Permit No. 2013-189 (our Docket No. 59-5-14 Vtec) be remanded to ANR for independent review. In re Costco, 2016 VT 86, ¶¶ 18–21. The Supreme Court rejected Vallee's arguments and upheld our determination that "a remand to ANR was unnecessary because the evidence showed that the impacts from the pipe and outlet structure to the wetlands and surrounding buffer would be minimal, and would not affect any parties not [already] before the court." In re Costco, 2016 VT 86, ¶ 24. Costco subsequently applied for an amendment to Stormwater Permit No. 4114–9015.2.[5]

Under the amendment, Costco proposed to forego the 8" underground pipe and outlet structure that encroached into the Lot 5 wetland buffer, and instead have all treated stormwater, including that from one-year and ten-year storm events, flow into the pre-existing man-made drainage ditch along Mountain View Drive and into Sunnyside Brook. Because of the improvements to Costco's stormwater treatment systems previously approved by ANR, this Court, and the Vermont Supreme Court, the pre-existing man-made drainage ditch would now transport stormwater that has received improved treatment, such that it complies with the current Vermont stormwater treatment standards. In re Costco, 2016 VT 86, ¶ 43–45. Since the previous design called for the lower flow, one-year storm discharge pipe to be below the elevation of the higher flow, ten-year storm discharge, Costco's revised plan calls for a pump, to be located within Wet Pond #1, to pump the low flow discharges up to the higher discharge point, where all treated stormwater, from both one-year and ten-year storm events, would be transported by the man-made drainage ditch alongside Mountain View Drive, to Sunnyside Brook. In 2015, Costco applied for an administrative amendment to Permit No. 4114-9015.2 that

---

[5] There is some suggestion in the affidavits presented in the current appeal that ANR rejected Costco's subsequent stormwater permit amendment application concerning the construction of the outlet structure within the buffer for the Lot 5 wetland. Whatever contributed to Costco's decision to amend its outlet structure plans does not appear to be relevant to our consideration of the pending motions.

would authorize these changes. When ANR issued its administrative amendment, labeled Stormwater Permit No. 4114-9015.2A, Vallee appealed that determination to this Court; that appeal became the thirteenth appeal of a determination associated with the proposed Costco expansion plans and was assigned Docket No. 84-7-15 Vtec.

Once the parties completed the limited discovery necessary to prepare for trial, and the Court addressed the parties' pre-trial motions, the matter was set for trial on July 26, 2016. When all parties were afforded an opportunity to present all relevant and admissible evidence, including expert reports and testimony, the Court took a brief recess, conducted its research and deliberations, and reconvened the merits hearing to announce its determinations on the record. Specifically, the Court determined that the credible evidence presented supported an affirmation of ANR's determinations, which included the following:

(1) The proposed project changes do not reduce the quality of the stormwater discharge;

(2) The proposed project changes do not substantially increase the quantity of the stormwater discharge or change the stormwater discharge location so as to adversely affect instream hydrology or geomorphology; and

(3) There is not a significant change in the type or nature of proposed treatment.

See State Stormwater Discharge Permit 4114-9015.2 amendment determination, dated June 21, 2015 and admitted as Vallee Exhibit 8 at the July 26, 2016 trial in Docket No. 84-7-15 Vtec.

This Court thereafter issued a Judgment Order to accompany its on-the-record determinations. See Costco Stormwater Permit Amendment Appeal, No. 84-7-15 Vtec (Vt. Super. Ct. Envtl. Div. Jul. 29, 2016) (Durkin, J.). No party to those proceedings appealed that Judgment Order. We therefore regard the ANR and Court determinations made in that Docket as final and binding upon the parties.

In the current appeal, Vallee asks whether Costco should be required to apply for and obtain an amendment to its Act 250 Permit No. 4C0288–19C "in order [to] modify the stormwater system previously approved by the District Commission," this Court and the Vermont Supreme Court. See Appellant Vallee's Statement of Questions, filed December 30, 2016, at 1. Appellant appears to assert that the proposed changes to the stormwater system and permit are somehow material enough to change the project's impact under the applicable Act 250 criteria, even in

light of this Court's previous affirmation of the ANR determination that the proposed revisions to the low-flow outlet discharge of treated stormwater: (1) will not reduce the quality of the treated stormwater; (2) will not substantially increase the quantity of treated stormwater discharge nor adversely affect instream hydrology or geomorphology of the receiving stream; and (3) will not significantly change the type or nature of proposed treatment.

Thankfully, when called upon to address an application to amend an Act 250 permit, or to address whether an amendment is necessary, we are not required to again review all Act 250 criteria which may have been impacted by the original project. Rather, we are directed to determine whether the changes proposed to a project constitute a "material change"; to the extent that they do, a project developer is required to apply for and receive an amendment to its Act 250 permit, pursuant to Act 250 Rule 34(A).

Our Supreme Court has recently provided the following guidance on how to determine whether a material change is proposed for an already permitted project:

> The analysis for determining if there is a material change is similar to that used for a substantial change--there must be a cognizable change that will have a significant impact on a finding or condition or may result in significant adverse impact on any of the [applicable] Act 250 criteria. See NRB Rule 2(C)(6) (defining material change as "any change to a permitted development or subdivision which has a significant impact on any finding, conclusion, term or condition of the project's permit or which may result in a significant adverse impact with respect to any of the criteria . . .").

In re Request for Jurisdictional Op. re: Changes in Physical Structures & Use at Burlington Int'l Airport for F-35A, 2015 VT 41, ¶ 25, 198 Vt. 510 (quoting what is now codified as Act 250 Rule 2(C)(6)).

Our prior determinations in the last stormwater permit amendment application appeal appear to guide our determinations here, since we have already concluded that the proposed change in how treated stormwater outflows are transported to Sunnyside Brook will not change the quality or quantity of stormwater discharged and will not have any significant effect on discharge rate. See Costco Stormwater Permit Amendment Appeal, No. 84-7-15 Vtec at 2 (Jul. 29, 2016). We further held that having one discharge point instead of two, and using a pump instead of a gravity system, would have no negative impact on relevant water quality criteria, but may possibly have a beneficial effect. Id. We further emphasized that all of the proposed

changes are to the post-treatment part of the system, and that there was no proposed change to the approved treatment methods. Id.

However, in an abundance of caution, we continue our analysis of the additional issues Appellant raises in this appeal. In particular, we note that while the legal analysis in both appeals is similar, and may appear identical, we are called upon in this current appeal to determine whether the proposed changes "will have a significant impact on a finding or condition or may result in significant adverse impact on any of the [applicable] Act 250 criteria." Burlington Airport, 2015 VT 41, ¶ 25.

Appellant appears to focus its allegations upon possible impacts to the Lot 5 wetland. In particular, Appellant implies that the proposed changes will cause approximately one million gallons of additional stormwater to flow into the Lot 5 wetland, thereby causing severe adverse impacts to that wetland and causing it to become a receiving water of the stormwater. If true, this latter assertion has importance in our analysis because the applicable wetland and stormwater rules could require treated stormwater to be retained in Wet Pond #1 for a longer period of time.

Appellant presents these assertions though expert witnesses that have been previously employed by Appellant in some of the thirteen prior appeals concerning the Costco expansion plans. Appellant offers affidavits from its experts that suggest that "over one million gallons of runoff annually (precipitation for every rain event) will be discharged into the wetlands _ditch_." Affidavit of Andres Torizzo dated June 14, 2017, filed in support of Appellant's summary judgment motion (emphasis added).[6] Appellant also filed a second affidavit from a wetlands expert, Dori Barton, who states the general proposition that such a volume of water into a wetland can have "impacts" and that the "impact of stormwater discharged to the Wetland were not considered" by Costco, the District Commission, or this Court. Affidavit of Dori Barton, dated June 14, 2017, at 2.

These expert representations remind the Court of the often-repeated adage that courts "should not be buffaloed by unreasoned expert opinions." Mid-State Fertilizer v. Exchange Nat'l

---

[6] Mr. Torizzo was presented as an expert "stormwater sampling, analysis, modeling, and design projects." Id. at 1. He does not present himself as an expert in wetlands and possible impacts upon wetland. We understand that that is why Appellant supplemented his affidavit with that of Ms. Barton.

Bank, 877 F.2d 1333, 1340 (7th Cir. 1989) (citing Paul Meier, Damned Liars and Expert Witnesses, 81 J. Am. Statistical Ass'n 269 (1986)).

Expert testimony can provide substantial guidance to a trial court, but only when the expert provides an explanation of the factual foundation for the opinions that they offer. When the factual foundation is absent, the opinion testimony becomes untenable. In fact, our Supreme Court, and courts from other jurisdictions have held that "mere conclusory allegations without facts to support them" are insufficient to survive review during a summary judgment analysis. White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28 (1989) (quoting Central Hudson G. & E. Corp. v. Hatzel & Beuhler, Inc., 202 N.Y.S.2d 818, 822 (N.Y. Sup. Ct. 1956), aff'd, 11 A.D.2d 707 (1960)).

When an "expert presents 'nothing but conclusions [but] no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected,' such testimony will be insufficient to defeat a motion for summary judgment." Cobb v. Gibson, No. 2001-338, slip op. at 2 (Vt. June 1, 2002) (unpub. mem.), available at https://www.vermontjudiciary.org/sites/default/files/documents/eo01338.pdf (quoting in part Morais v. Yee, 162 Vt. 366, 371–2 (1994)).

The experts presented by Vallee here present opinion testimony that appears informative, but that quality evaporates when we view the actual facts presented, or rather the absence of facts presented. Without a factual foundation presented, their opinion testimony provides no relevance to the legal issues we must address. Specifically, neither Appellant nor its experts represent that stormwater, treated or untreated, will enter the identified wetland.[7] Rather, as Mr. Torizzo admits, the treated stormwater flows into the ditch near and within the wetland boundaries. He makes no representation that the treated stormwater will or is likely to flow into the wetland; he merely offers the opinion of adverse impacts *if* stormwater was to flow into the wetland.

---

[7] Vallee notes that during the 2016 stormwater permit appeal trial, Janna Calvi, and ANR expert, admitted that some of the treated stormwater might "infiltrate" into the wetland. We recall and understood this testimony to refer to the leaching process, whereby water at the surface will leach through soils and become groundwater. We do not regard this testimony, nor Vallee's reference to it in this appeal, to contradict Costco's representations concerning the ditch. In any event, we concluded in the trial of the Costco Stormwater Permit Amendment Appeal, No. 84-7-15 Vtec, that Sunnyside Brook, and not the Lot 5 wetland, was the "state waters" that received the treated stormwater from the Costco site.

Appellant offers no credible factual representation to contest Costco's representations that the man-made drainage ditch has sufficient depth to segregate from the wetland the treated stormwater it carries to Sunnyside Brook. In fact, Costco's expert represents that the peak flow rate, flow depth, and velocity within the drainage ditch after the improved stormwater treatment system is constructed will have similar rates to the current flows, depth, and velocity in that same ditch before these improvements are constructed. Costco's experts calculate that this drainage ditch is of sufficient depth and isolation from the wetland to provide sufficient transport of treated stormwater from an extreme, 100-year storm event, without allowing the water to overcome the banks of the ditch and invade the wetland.

Appellant offers no facts to contradict these factual representations presented by Costco's experts. We must therefore regard the Costco representations as true, for the purpose of our summary judgment analysis. V.R.C.P. 56(e)(2) and (3); *see also* Gallipo v. City of Rutland, 2005 VT 83, ¶ 33, 178 Vt. 244.

Lastly, we address Appellant's assertion that there are material and significant impacts, not previously considered by the Court, in regard to the impacts upon wetlands. This argument is intertwined with the arguments we have just addressed and rejected as not having a factual foundation presented by Appellants. The additional assertion by Appellant is that, assuming that over one million gallons of additional treated stormwater is being deposited annually into the wetlands, we should now regard the wetlands, and not Sunnyside Brook, as the "receiving waters" for purposes of the stormwater and wetlands regulations. We need not commit much additional analysis to this assertion since, as we have previously stated, Appellants have not presented any factual representation as to how the treated stormwater will overflow the pre-existing banks of the man-made ditch, a ditch that has isolated and carried stormwater for decades.

With all due respect to the sincere efforts Appellant may have for highlighting the impacts that the Costco expansion may have upon it and others, it truly appears that Appellant may be taking advantage of the confusion that has arisen because of where this man-made ditch is located. Back when the Lot 5 wetland was regarded as an unprotected Class III wetland, not much attention was paid to the ditch that ran through it. Since our 2014 trial, we must respect

the protected status of the Class II Lot 5 wetland. However, both at our 2016 trial, and in the uncontested facts presented in the pending appeal by Costco's expert affidavit, we are presented with undisputed representations that the pre-existing man-made ditch (1) segregates the treated stormwater from the wetland that the ditch transverses; and (2) has sufficient capacity to segregate treated stormwater, even when Wet Pond #1 receives stormwater from an extreme, 100-year storm event.

For all these reasons, we conclude that the undisputed material facts show that Costco's planned revisions to how treated stormwater will be transmitted from its site to the receiving waters of Sunnyside Brook does not evidence any material change that would cause a significant impact upon a finding or condition contained in Costco's existing Act 250 Permit No. 4C0288–19C, nor may the proposed outflow changes result in a significant adverse impact on any of the Act 250 criteria that are applicable to this project. We therefore **GRANT** summary judgment on the NRB's motion on Appellants sole legal Question and do hereby **AFFIRM** the November 4, 2016, Jurisdictional Opinion No. 4-252 (Corrected) issued by the District 4 Coordinator, concluding that Costco should not be required to apply for and receive an amendment to its Act 250 Permit.

These determinations complete the current proceedings in this appeal before this Court. Separate Entry Orders are issued contemporaneously with this Decision to address the three remaining motions. A Judgment Order accompanies this Decision.

Electronically signed on December 8, 2017 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge

-11-