VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        23-AP-420



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

AUGUST TERM,   2024

| | |
|---|---|
| James Fiske & Tina Fiske v. Carey Halkiotis* } | APPEALED FROM: |
| } | Superior Court, Windsor Unit, |
| } | Civil Division |
| } | CASE NO. 546-12-19 Wrcv |
| | Trial Judge: Robert P. Gerety, Jr. (Ret.) |

In the above-entitled cause, the Clerk will enter:

Defendant appeals the trial court's judgment in favor of plaintiffs in this dispute over an unsuccessful real estate transaction.  We affirm.

The following facts are derived from the trial court's findings and the parties' exhibits. Plaintiffs owned real estate in Sharon, Vermont, consisting of a residence and fifty-two acres of land.  In March 2010, plaintiffs entered into a written purchase and sale agreement (P&S) to sell the property to defendant for $425,000.  The P&S stated that the closing was to take place in December 2010.  Defendant was required to pay a partially refundable deposit of $42,000 by October 2010.  Defendant was allowed to cancel the purchase if he was unable to obtain financing for eighty percent of the purchase price.  The P&S stated that "[p]ayment of the purchase price is due at Closing and shall be adjusted for any Contract Deposits held by Escrow Agent to be disbursed at closing [sic]."

On the same day that the parties executed the P&S, they entered into a written lease agreement allowing defendant to take immediate possession of the premises.  Defendant was required to pay plaintiffs $2200 per month in rent and was responsible for utilities.  The term of the original lease was one year.  The lease stated that plaintiffs could increase the rent at any time after one year with sixty days' notice.

Defendant was unable to obtain the necessary financing for the purchase.  Instead of cancelling, he requested an extension of the closing deadline.  Plaintiffs agreed, and the parties executed the first of four written addenda to the P&S.  This first addendum increased the purchase price to $450,000, which would be reduced to $435,000 if defendant paid certain costs. It extended the closing date to December 2013.  The addendum made the original $42,500 deposit completely nonrefundable and required defendant to pay that amount in two installments by November 30, 2010.  It required him to pay three additional nonrefundable deposits of $65,000 in December 2011, December 2012, and December 2013.  The parties also separately agreed to extend the lease to December 2013 and to increase rent to $2650 per month.

The parties subsequently agreed to a second addendum, which fixed the purchase price at $435,000 without conditions, required defendant to pay a real estate agent commission of $26,100, and reduced the deposit due in December 2011 to $38,900 to reflect defendant's payment of the commission.

In 2015, the parties agreed to a third addendum extending the closing date to December 2016. The parties agreed that defendant did not pay the $65,000 deposit that was due in December 2013. They agreed that defendant would pay four additional nonrefundable deposits of $25,000 by October 2016.

Plaintiffs were ready and able to close in December 2016, but defendant did not have the necessary funds or financing. The parties agreed to a fourth addendum to the P&S that extended the closing date to March 2018 and required defendant to pay an additional nonrefundable deposit of $25,000. The sale did not close in March 2018 and the parties did not agree to any further extensions.

Although the written lease agreement expired by its terms in December 2013, defendant remained in possession of the premises and continued to pay rent. By May 2019, rent had increased to $3000 per month, plus a wire fee of $20. In June 2019, after the parties were unable to agree to a further extension of the P&S, defendant stopped paying the full amount of rent.

In December 2019, plaintiffs filed a complaint for ejectment and unpaid rent. Defendant filed counterclaims seeking damages for retaliatory eviction, unjust enrichment, and betterments. The parties agreed to a partial judgment for possession, and plaintiffs resumed possession in April 2020.

In July 2023, the trial court held a bench trial on the remaining claims. The court found that defendant owed $15,000 in unpaid rent. The court denied defendant's request for a setoff for late fees and wire fees because defendant failed to prove the amount of fees that he paid. It found that plaintiffs had breached the implied warranty of habitability by failing to timely repair the furnace in 2019, which deprived defendant of heat and hot water for approximately a month. It awarded defendant $1240 in damages and attorney's fees. The court rejected defendant's retaliatory eviction claim, concluding that defendant was evicted not because he complained about the furnace but because he failed to meet his obligations under the P&S and plaintiffs wanted to sell the property. Finally, the court denied defendant's claim for betterments, finding that the value of defendant's improvements to the property was exceeded by the costs plaintiffs incurred in repairing damages he caused during his tenancy. It therefore entered judgment for $13,760 in damages to plaintiffs, to be reduced by the $3591.78 in rent held in escrow by the court.

On appeal, defendant first argues that the court erred in failing to address his unjust enrichment claim. He asserts that it would be inequitable to allow plaintiffs to retain the $185,000 that he paid them. "Under the doctrine of unjust enrichment, a party who receives a benefit must return the payment if retention would be inequitable. Unjust enrichment applies if in light of the totality of the circumstances, equity and good conscience demand that the benefitted party return that which was given." Gallipo v. City of Rutland, 2005 VT 83, ¶ 41, 178 Vt. 244 (citation and quotation omitted). Whether a party may maintain a claim for unjust enrichment "is a question of law that we review de novo." Kellogg v. Shushereba, 2013 VT 76, ¶ 32, 194 Vt. 446.

The trial court failed to address defendant's unjust enrichment claim, even though he raised it in his pleadings and at trial. However, the omission does not require reversal because we conclude that the deposit payments were made pursuant to the parties' written agreement and therefore defendant cannot recover under a theory of unjust enrichment. See In re Handy, 171 Vt. 336, 343 (2000) (explaining that Supreme Court will not reverse "if the record before us discloses any legal ground which would justify the result" (quotation omitted)).

"A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (2011); see Beldock v. VWSD, LLC, 2023 VT 35, ¶ 78, 307 A.3d 209 (adopting Restatement rule). This is because unjust enrichment is an equitable remedy designed to provide relief when no contract exists. Beldock, 2023 VT 35, ¶ 78. "The doctrine does not operate to rescue a party from the consequences of a bad bargain." Id. (quotation omitted).

Here, defendant—who at the time was a Vermont-licensed real estate agent—entered into a written contract, subsequently modified by written addenda, in which he agreed to make a series of deposits to secure the purchase of the property that were expressly nonrefundable if the sale did not close. The payments fell squarely within the scope of the contract. Defendant does not claim that the P&S or the addenda were invalid. Cf. Kellogg, 2013 VT 76, ¶ 19 (concluding that plaintiff could recover for unjust enrichment where parties' intended contract for deed was invalid due to noncompliance with Statute of Frauds). Defendant is therefore precluded from recovering under a theory of unjust enrichment. See Masiello Real Est., Inc. v. Matteo, 2021 VT 81, ¶ 29, 215 Vt. 607 (holding plaintiff could not recover under quasi-contract theory for actions covered by contract).

For this reason, we do not consider defendant's claims that plaintiffs interfered with his ability to close the purchase by including a provision in the 2017 addendum that required defendant to indemnify plaintiffs for any federal capital gains taxes they might incur as a result of the sale, or that his forfeiture of a large percentage of the purchase price weighs in favor of restitution. These equitable considerations would only be relevant if an unjust enrichment claim were available to defendant.

Defendant also claims that plaintiffs violated the P&S by failing to place deposits into an escrow account. Defendant did not assert a breach-of-contract claim below and has therefore waived any such claim on appeal. See Bull v. Pinkham Eng'g Assocs. Inc., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). To the extent that defendant presents this as evidence in support of his unjust-enrichment theory, it fails for the same reason as his other claims.

Defendant alternatively argues that the P&S is properly interpreted as a contract for a deed and therefore the deposits gave him an equitable interest in the property. We disagree. "In interpreting a contract, we look to the intent of the parties as it is expressed in their writing." Prue v. Royer, 2013 VT 12, ¶ 20, 193 Vt. 267. Here, there were two separate agreements: an ordinary lease agreement that gave defendant possession of the premises in exchange for rent, and the P&S. The plain language of the P&S makes clear that it is not a contract for a deed. See id. (explaining that when contract is unambiguous, plain language controls). In a contract for a deed, "[t]he prospective purchaser occupies the premises and makes the payments until the point of delivery of the deed and execution of the mortgage is reached. Since the payments are applied to the purchase obligation as they accumulate, an equity, though perhaps small, comes into

being." <u>Tromblay v. Dacres</u>, 135 Vt. 335, 339 (1977).  The P&S did contemplate that defendant would occupy the premises but required him to pay monthly rent separate from any contract deposits.   More importantly, the P&S, as modified by the addenda, described the deposit payments as nonrefundable and stated that they would be applied to the purchase price at closing, not as they accumulated.  For this reason, the agreement is distinguishable from that in <u>Prue v. Royer</u>, where the language of the parties' agreement "strongly" indicated that the plaintiffs' payments after a certain date were intended to pay down the purchase price of the property. 2013 VT 12, ¶ 28.  We therefore see no reason to disturb the decision below.

<u>Affirmed</u>.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice

4