VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    24-AP-170



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

### NOVEMBER TERM,   2024

| | |
|---|---|
| In re Benoit CU Appeal (Brenda Yacavoni\* & William Yacavoni\*) | }    APPEALED FROM: |
| | } |
| | }    Superior Court, Environmental Division |
| | } |
| | }    CASE NO. 23-ENV-00103 |
| | Trial Judge: Thomas S. Durkin |

In the above-entitled cause, the Clerk will enter:

Neighbors appeal pro se from the Environmental Division's decision in favor of applicants.  We affirm.

Applicants sought permission from the Town of Barre Development Review Board (DRB) to convert an existing barn on their property into a "community center/recreational facility" to host weddings and special events.  In August 2023, following a public hearing, the DRB approved the request with conditions.  Neighboring landowners appealed to the Environmental Division.  Following a site visit and a two-day merits hearing, the Environmental Division granted applicants' request for conditional-use approval, subject to the conditions imposed by the DRB.

The court made numerous findings, including the following.  The subject property is a 53-acre parcel located in the town's low-density residential district.  There is a barn on the property and the remainder of the land is leased for growing agricultural crops.  The home of the closest appealing neighbor was 335 feet from the barn; the home of appellants in the instant case was 605 feet from the barn.

Applicants proposed to use the barn venue no more than twenty-eight days per year with limited hours.  They implemented various mitigation measures in response to noise, lighting, and alcohol-use concerns.  Applicants also proposed to expand existing parking near the barn, create an area for portable toilets and food trucks, and establish fire pits and other related outdoor activities.  The expected attendance at events was 100-150 guests, with a maximum of 200 people.

The court agreed with the town that the project fit within the town bylaw's definition of a "community center/recreational facility."  That term is defined as:

A building, together with accessory buildings and uses, used for recreational and cultural activities operated for profit for the benefit of the community; shall only have an outdoor public address system or any type of amplified music device by conditional use permit.

The court found that the barn would be used primarily to host weddings, anniversaries, and birthday parties, all of which it considered cultural events. These events would be operated for profit and provide a venue for special events to take place in the community. The court identified other benefits to the community from the project, such as: preserving a historic barn through rehabilitation and reuse; increasing the property's value and thereby increasing property tax revenue; generating rooms-and-meals tax revenue; and providing employment opportunities during construction and operation. The court rejected neighbors' assertion that the facilities needed to be open and available to the public to constitute a community center, finding no language to that effect in the definition.

The court considered the project appropriate for the low-density residential district, which was "limited to non-intensive land uses." As set forth in the relevant bylaw:

The purpose of this district is to prevent premature development of land, retain certain areas for non-intensive uses, prevent development where it would be a burden on the community, and retain areas for open space. Since the rural character of these lands depends on open space and natural areas, protection of these features should be considered when evaluating proposed conditional uses. Municipal water and sewer may or may not be available.

The court concluded that the project fell squarely within this description. It was located on a roughly 50-acre parcel but only took up about 2 acres, most of which was to be used for parking and accessory outdoor activities. The remainder of the property would continue to be used for agricultural activities, thereby preserving open space and the rural character of the neighborhood. The only "development" on the property, the court noted, was the restoration and rehabilitation of the existing barn and small expansion of an existing parking area.

Finally, as relevant here, the court considered if the proposed development would have an undue adverse effect on "[t]he character of the area affected as defined by the purpose(s) of the zone within which the project is located." As set forth above, the court found the project consistent with the purpose of the low-density residential district and concluded that it would not have an undue adverse effect, particularly with respect to noise and lighting. The surrounding neighborhood consisted primarily of residential and agricultural uses and it was a short distance from downtown Barre. The homes of several neighbors were located in the high-density residential district. Applicants had implemented several mitigation measures to minimize any noise and lighting impacts. Taken together, the court reasoned, these measures would ensure that there was no undue adverse impact on the character of area. The court recognized that there were homes in relatively close proximity to the barn but, as noted above, it concluded that adequate mitigation measures had been proposed to prevent an undue adverse impact on neighboring properties. This appeal followed.

2

"We review the Environmental Division's factual findings with deference and will not overturn them unless taking them in the light most favorable to the prevailing party, they are clearly erroneous, meaning that there is no credible evidence to support them." In re Burton Corp. Conditional Use/Act 250, 2024 VT 40, ¶ 18 (quotation omitted). We review the court's legal conclusions to determine if they are "reasonably supported by the findings." Id. (quotation omitted). We review pure questions of law, such as the interpretation of the town's bylaws, de novo, although "we continue to defer to a municipality's interpretation of its own ordinance if it is reasonable and has been applied consistently." Id. (quotation omitted).

Neighbors did not order a transcript of the proceedings below and they thereby "waived any challenge to sufficiency of the court's findings." Evans v. Cote, 2014 VT 104, ¶ 7, 197 Vt. 523; V.R.A.P. 10(b)(1) (explaining that appellant is responsible for ordering transcript and if no transcript ordered, appellant "waives the right to raise any issue for which a transcript is necessary for informed appellate review"). "Without the transcript, this Court assumes that the trial court's findings are supported by the evidence." Cote, 2014 VT 104, ¶ 7. We thus do not address any challenges to the court's findings. We similarly do not address any arguments raised for the first time in a reply brief, which here includes challenges to the evidentiary support for the court's factual findings. See, e.g., Gallipo v. City of Rutland, 2005 VT 83, ¶ 52, 178 Vt. 244 (stating that issues not raised in original brief may not be raised for first time in reply brief).

With this in mind, we turn to neighbors' arguments. Neighbors first assert that the court erred in concluding that the project fit within the definition of a "community center." They maintain that the project involves private, invitation-only events, which is not consistent with a standard definition of a "community" benefit. They further contend that the project is not "limited to non-intensive land use," as required by the town bylaw. Neighbors also complain about the court's analysis of "undue adverse effect" and argue that the court ignored evidence that they presented on this subject. Neighbors argue that the court should have considered the effect of the project not just as measured from their homes but also from their shared property lines.

We reject these arguments, which largely turn on the Environmental Division's assessment of the weight of the evidence. See In re N. E. Materials Grp., LLC, 2019 VT 55, ¶ 6, 210 Vt. 525 (recognizing that Environmental Division "determines the credibility of witnesses and weighs the persuasive effect of evidence" (quotation omitted)). As indicated above, the town bylaws define a "community center" as a "building, together with accessory buildings and uses, used for recreational and cultural activities operated for profit for the benefit of the community." In addition to providing a venue for special events to take place in the community, the court found that the community would benefit from the project because applicants were preserving a historic barn through rehabilitation and reuse, increasing their property value and thereby increasing property tax revenue, generating rooms-and-meals tax revenue, and providing employment opportunities during construction and operation. The fact that these might be invitation-only events does not undermine the court's finding as to other benefits the project will provide to the community, nor does the language of the bylaw require that such uses be open to the public. The court's findings support its conclusion regarding the classification of this project. As applicants note, moreover, the DRB has previously approved the conversion of an existing barn into a wedding venue in the town as a "community center/recreation facility," as it did in this case. See In re Burton Corp., 2024 VT 40, ¶ 18 (recognizing that this Court "defer[s] to a municipality's interpretation of its own ordinance if it is reasonable and has been applied consistently"). The fact that the other property was located in a medium-density residential

district does not undermine the Town's classification of this type of use as a "community center/recreation facility."

The court's other conclusions are equally supported. The fact that there will be some outdoor activity in connection with the special events does not mean that it involves an "intensive land use," as neighbors assert. The court found that the only "development" on the property was the restoration and rehabilitation of the existing barn and small expansion of an existing parking area; the remainder of the fifty-three-acre property would continue to be used for growing crops. The court did not err in considering the proposed use as a "non-intensive land use."

The court provided a reasoned explanation for its remaining conclusions, including that the project would not have an undue adverse impact on the character of the area. It was not required to credit testimony offered by neighbors on this subject. The court found here that the noise and lighting mitigation steps taken by applicant resulted in no undue adverse effect. It found that applicants installed double pane windows, added insulation and an HVAC system, and they limited amplified music to inside the barn. The parking area was oriented to avoid vehicle lights being aimed at adjacent properties and all permanent outdoor lighting will be LED and downcast. These findings support the court's conclusion as to the absence of an undue adverse effect. The court considered the effect of the project on neighboring properties, noting in its decision the relatively short distance of various homes from the barn; it considered and rejected neighbors' assertions regarding noise in the vicinities of their homes as well. While neighbors disagree with the result, they fail to show that the Environmental Division erred in reaching its decision.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice

4