Vermont Superior Court
Filed 07/14/25
Addison Unit

VERMONT SUPERIOR COURT                                          CIVIL DIVISION
Addison Unit                                                   Case No. 21-CV-01732
7 Mahady Court
Middlebury VT 05753
802-388-7741
www.vermontjudiciary.org



---

Christopher Huber v. Janet Currie, et al

---

## FINDINGS AND ORDER

This is a breach of contract and fraudulent transfer action brought by Plaintiff Christopher Huber against Defendants Janet Currie, 57 Sanford Street LLC, and Valley Stock Farm LLC. Complaint, filed 6/28/21, p. 5, 8. Ms. Currie has counterclaimed for breach of contract, fraud, and predatory lending, among other claims. Answer/J.Currie; 57 Sanford Street, Valley Stock, filed 7/23/2021, p. 11–15. The dispute arose out of Ms. Currie's failure to repay a loan from Mr. Huber intended to finance the purchase of an LLC. Entry Regarding Motion, filed 7/1/21. The property owned by the LLC was to be used as collateral for the loan, and in the formation of a hemp processing business. Decision on VSECU Motion for Summary Judgment, filed 12/2/22, 21-CV-01732, p. 1, 3. Before Ms. Currie failed to repay the loan to Mr. Huber, she took out an additional $80,000 business loan with the Vermont State Employees' Credit Union ("VSECU"), also collateralized by the property held by 57 Sanford Street. *Id.* The court granted Mr. Huber's motion for a writ of attachment on the original loan amount of $185,000 on July 1, 2021. Order of Approval and Findings, filed 7/1/21. Mr. Huber initially brought additional claims against Vermont State Employees' Credit Union which were largely dismissed by the court in its December 27, 2023 partial grant of summary judgment. Decision on VSECU Motion for Summary Judgment, p. 7. In that order, the court found VSECU's mortgage to be superior to Mr. Huber's, due to his failure to acknowledge or record his mortgage until 9 months after VSECU had recorded its lien. *Id.* at 3–4. The court held a bench trial on the remaining claims on March 24, 2025, which continued in a hearing on April 22, 2025.

Following those hearings, Ms. Currie has moved to set aside this court's partial summary judgment granted on December 27, 2023, and submits that the court should find in her favor on the remaining issues. Motion to Vacate Partial Summary Judgment, filed 3/22/25, p. 1; Motion for Directed Verdict, filed 4/7/25; Reply to Opposition for Directed Verdict, filed 4/18/25; Defendants' Post-Trial Brief, filed 5/22/25. Mr. Huber opposes these motions. Opposition to Motion to Vacate, filed 4/3/25; Opposition to Motion for Directed Verdict, filed 4/14/2025; Plaintiff's Post-Trial Brief, filed 5/22/25; Plaintiff's Reply to Defendants' Post-Trial Brief, filed 5/30/25. This decision addresses the issues raised in those motions and oppositions.

### Waiver of Usury Defense

Ms. Currie asserts that the terms of the Promissory Note between her and Mr. Huber were usurious, and that she effectively invoked the affirmative defense of usury when she included it among other defenses in her answer. Reply to Opposition to Directed Verdict, p. 2; Defendants' Post-Trial Brief, filed 5/22/25, p. 2–3. In her view, the court improvidently granted partial summary judgment when it awarded Mr. Huber the $185,000 that was the original subject of the parties' contract. Entry

Regarding Motion, filed 1/3/24, p. 1. Because she maintains she properly raised the defense of usury, in conjunction with Mr. Huber's alleged misconduct, the court should not only decline to award interest at the rate specified in the note, but go beyond the statutory penalty in 9 V.S.A. § 50(b) and vacate the entire award. Motion to Vacate, p. 2; Motion for Directed Verdict, p. 3–4. Alternatively, she asserts that *Roy v. Woodstock Community Trust* stands for the proposition that "remedial statutes which clearly affect or control the rights and obligations of the parties are not 'affirmative defenses' as contemplated by the Rules of Civil Procedure, and do not need to be pled." Reply to Opposition to Directed Verdict, p. 2.

In response, Mr. Huber argues that Ms. Currie waived the defense of usury because it does not appear in her Opposition to Mr. Huber's Motion for Summary Judgment, although usury does appear in her initial list of affirmative defenses in her Answer. Opposition to Motion to Vacate, filed 4/3/25, p. 1–2; Opposition to Motion for Directed Verdict, p. 1–2; Opposition to Motion for Summary Judgment, filed 12/2/23; Plaintiff's Post-Trial Brief, filed 5/22/25, p. 4. He points to *State of Vermont Agency of Natural Resources v. Parkway Cleaners*, 2019 VT 21, 209 Vt. 620, for the proposition that affirmative defenses not raised on summary judgment may not be later brought up in a new motion. 2019 VT 21, ¶ 45.

9 V.S.A. § 50(b) forbids a lender from "knowingly or willfully mak[ing] any contract, express or implied, that directly or indirectly calls for the payment of any interest or finance charge in excess of the legal rate . . . ." "Usury is an affirmative defense." *Vineyard Brands, Inc. v. Oak Knoll Cellar*, 155 Vt. 473, 477 (1990). Failure to raise and support an affirmative defense in opposition to summary judgment waives the defense. *State of Vermont Agency of Nat. Res. v. Parkway Cleaners*, 2019 VT 21, ¶ 45, 209 Vt. 620 (affirming trial court did not abuse discretion in granting summary judgment without considering statute of limitations defense when defendant raised defense in answer but failed to raise in subsequent opposition to summary judgment); *Spaulding v. Cahill*, 146 Vt. 386, 389 (1985) ("Affirmative defenses not specifically pled in response to a preceding pleading are waived.") (quotation omitted); *Kelly v. Town of Barnard*, 155 Vt. 296, 299 (1990) ("when a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts . . . .") (quotation and punctuation omitted); See *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076 (D. Del. 1990), aff'd, 932 F.2d 959 (3d Cir. 1991) ("A party resisting summary judgment cannot expect to rely on the bare assertions or mere cataloguing of affirmative defenses . . . [t]he requirement of pointing to specific facts to defeat a summary judgment motion is especially strong when the nonmoving party would bear the burden of proof at trial, as these defendants would on the affirmative defenses they plead." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Further, the Vermont Supreme Court has affirmed that "'the purpose of Rule 56(c)(2) is not served if the court is required to review . . . the entire record in determining whether a genuine issue of material fact exists.'" *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 30, 178 Vt. 244.

In this case, Ms. Currie filed her Answer responding to Plaintiff's Complaint on July 23, 2021. She was represented by counsel at this time. Answer, p. 16. The document references usury under a section labeled "Affirmative Defenses." *Id*., p. 6. The defense was included along with 12 other possible defenses in her answer, all of which were supported by conclusory assertions. See *Id*. (e.g., "The Defendant alleges the Plaintiff cannot recover for his complaint because of the doctrine of laches.") Ms. Currie's initial counsel moved to withdraw on December 21, 2021; the motion was granted on January 18, 2022. Entry Regarding Motion, filed 1/20/2021, 21-CV-01732. Mr. Huber

moved for summary judgment on September 18, 2023. Ms. Currie moved for an extension of time to respond to Mr. Huber's motion and retain new counsel on October 9, 2023, which the court granted in part by extending the deadline for a response to December 1, 2023. Entry Regarding Motion – Granted in Part, filed 11/6/2023. Ms. Currie submitted her opposition to Mr. Huber's motion by December 1, along with attached exhibits. In her opposition, Ms. Currie generally references her initial "affirmative defenses" from her answer and attaches that pleading as an exhibit. Opposition to Summary Judgment, filed 12/2/2023, p. 1, 7, Ex. E, filed 12/2/2023. However, she provides no additional information regarding which of the 13 defenses she plans to use, which of plaintiff's claims the defenses allegedly rebut, and no additional facts to support her allegations.

In ruling on Mr. Huber's motion for summary judgment, the court found that Ms. Currie "does not properly dispute these facts; nor does she support any of her affirmative defenses with evidence of record in this case." Entry Regarding Motion, filed 12/27/23; Opposition to Summary Judgment, filed 12/2/23. The court stands by this ruling and finds that Ms. Currie waived the affirmative defense of usury when she failed to properly support it with record evidence in response to a motion for summary judgment. *State of Vermont Agency of Nat. Res. v. Parkway Cleaners*, 2019 VT 21, ¶ 45.[1] Simply referencing a list of affirmative defenses previously raised in the answer without record support does not meet V.R.C.P. 56's requirement to "identify[ ] each claim or defense . . . on which summary judgment is sought." V.R.C.P. 56(a). That standard requires a nonmovant to point to "specific citations to particular parts of materials in the record . . . ." V.R.C.P. 56(c)(2); See Reporter's Notes, V.R.C.P. 8(c) ("The rule carries forward the language of the former Vermont statute that the pleader shall not only plead but 'establish' an affirmative defense.") The court is aware that Ms. Currie retained new counsel in August of 2024, and that counsel filed a Motion to Vacate this court's December 2023 order on March 22, 2025. Although "we accord pro se litigants some leeway, they must still follow the ordinary rules of procedure." *State v. Menize*, 2023 VT 48, ¶ 19, 218 Vt. 374 (citation omitted). In this case, the court partially granted Ms. Currie an extension of time to respond to Mr. Huber's motion and retain new counsel. Entry Regarding Motion – Granted in Part, filed 11/6/2023. Due to logistical difficulties, Ms. Currie was not able to retain new counsel until July 22, 2024. Motion to Continue Pretrial Hearing, filed 7/31/24. Even so, this court declines to consider a motion (filed 8 months after the attorney's initial appearance and 16 months after the court's original decision) seeking modification of that order. To do so would be to essentially give Ms. Currie a second chance at opposing summary judgment. "Interests of finality require that relief from a previous judgment be granted only in extraordinary circumstances." *Adamson v. Doge*, 174 Vt. 311, 327 (2002).

Because the court finds Ms. Currie waived the defense of usury, it does not reach the question of whether Mr. Huber demonstrated the intent necessary to violate 9 V.S.A. § 50(b). Motion for Directed Verdict, p. 3; Opposition to Motion for Directed Verdict, p. 3; Plaintiff's Post-Trial Brief, p. 1; Defendants' Post-Trial Brief, p. 3–5.

---

[1] The court finds no support in *Woodstock* for the broad holding regarding pleading of affirmative defenses that Ms. Currie advances in her brief. In that case, the Court dismissed the plaintiffs' claim that the defendant had waived "the defense of statute of limitations" in response to a claim of adverse possession by not raising it as an affirmative defense. The Court found this argument to misconstrue the nature of the concept of adverse possession. In reality, a claim for adverse possession does not exist until the statutory period has elapsed. 12 V.S.A. § 501. Thus, a claim to title via adverse possession asserted prior to that time would automatically fail, because it would not contain the necessary elements. As such, to say that a litigant must proactively assert a failure of the prescriptive period to run to defend against an adverse possession claim fundamentally misstates the law, as the Supreme Court noted. Roy v. Woodstock Cmty. Tr., Inc., 2013 VT 100A, ¶¶ 35–43, 195 Vt. 427. This court sees no indication that the Vermont Supreme Court's analysis of an extremely factually narrow set of circumstances in *Woodstock* was ever intended to be applied to actual affirmative defenses.

Fraudulent Transfer

In her motion for a directed verdict, Ms. Currie argues that because Mr. Huber has failed to establish that 57 Sanford Street LLC is a "debtor" as contemplated by Vermont's fraudulent transfer statute, the claim must fail. Motion for Directed Verdict, p. 5; Defendants' Post-Trial Brief, p. 6–8. 9 V.S.A. § 2288 (a) provides that "A transfer made or obligation **incurred by a debtor is voidable as to a creditor** . . . ." under certain circumstances laid out in the statute. 9 V.S.A. § 2288 (a) (emphasis added). Without an identified "debtor," there would be no one to whom liability for the "transfer or obligation" could attach. Motion for Directed Verdict, p. 5. Ms. Currie asserts a number of arguments in support of this conclusion. She argues that her status as a minority member of the LLC means she did not have authority to act on its behalf, or to make representations that she had the authority to do so. *Id*. She argues that the Promissory Note that creates contractual obligations between herself and Mr. Huber only refers to the parties in their individual capacities and makes no mention of the LLC. *Id*. Further, she states that because both parties "testified that they believed the initial transaction was a personal loan from Plaintiff to Ms. Currie," the LLC cannot be classified as a debtor. *Id*.

Mr. Huber responds that Ms. Currie's promise in the Note to "collateralize the loan with the premises known as 57 Sanford Road Orwell, VT" suffices to qualify the LLC as a debtor under the fraudulent transfer statute. Complaint p. 11, Opposition to Directed Verdict, p. 4; Plaintiff's Post-Trial Brief, p. 2–4. This is because at the time of the transfer, the LLC owned the property at 57 Sanford Road. Thus, Ms. Currie could only have used the property as collateral for a loan if she were acting as an agent of the LLC. Opposition p. 4, Post-Trial Brief p. 2. Mr. Huber argues that as an agent of the LLC, Ms. Currie had either actual or apparent authority to enter into the contract, or she ratified the contract through her actions after the fact. Opposition, p. 4–7; Post-Trial Brief p. 3. According to Mr. Huber, these facts in conjunction show that the LLC was a "debtor" under the fraudulent transfer statute. Further, as the sole member of both 57 Sanford Street LLC and Valley Stock Farm LLC at the time of the transfer between those entities, Ms. Currie should be found liable for fraudulent transfer. Opposition, p. 7. Her alleged liability stems from the fact that she made the transfer: 1) with "actual intent to hinder, delay, or defraud" Mr. Huber, or 2) "without receiving a reasonably equivalent value in exchange for the transfer . . . ." 9 V.S.A. § 2288(a)(1), (2). In support of his assertion that Ms. Currie demonstrated actual intent to defraud, he cites several factors from the list in § 2288(b).

As noted above, 9 V.S.A. § 2288 allows a creditor to void a transfer if the debtor made the transfer with intent to defraud or made the transfer without receiving equivalent value in exchange, under certain circumstances. 9 V.S.A. § 2288(a)(1), (2). The statute defines a debtor as "a person who is liable on a claim." 9 V.S.A. § 2285(6).[2] It defines "person" to include limited liability companies. 9 V.S.A. § 2285(11). It defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." 9 V.S.A. § 2285(15). Under § 2288(a)(2)(A), one set of circumstances implicating the statute occurs when the debtor engages in business or undertakes a transaction, without receiving reasonably equivalent value, "for which the remaining assets of the debtor were unreasonably small in relation to the business or

---

[2] In her Reply to Plaintiff's Opposition to Motion for a Directed Verdict, Currie characterizes Huber's citation to *Farnsworth v. Cochran* as "completely unavailing, as the statutory language in the cited statute has changed since that case was decided." It is not entirely clear to the court why Ms. Currie would take issue with an allegedly outdated citation while proffering a definition of "debtor" published in 1980, nearly forty years before the legislature inserted the current statutory definition in 2017.

transaction . . . ." 9 V.S.A. §2288(a)(2)(A). The other set occurs when the debtor makes the transfer without receiving equivalent value when they "intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." 9 V.S.A. §2288(a)(2)(B).

*Constructively Fraudulent Transfers*

Vermont courts have described transfers occurring under §2288(a)(2) as "constructively fraudulent transfers." *Kindred Nursing Centers E., LLC v. Est. of Nyce*, "Decision on Motion to Dismiss or Strike, Cross-Motion for Partial Summary Judgment, and Motion for Leave to File Second Amended Complaint," No. 5:16-CV-73, 2017 WL 2377876, at *5–6 (D. Vt. May 31, 2017); *In re Turner & Cook, Inc.*, 507 B.R. 101, 108–09 (Bankr. D. Vt. 2014) (quotation omitted). Specifically, these refer to transfers that "[occur] when a debtor makes a transfer (i) without receiving a reasonably equivalent value in exchange for the transfer, (ii) at a time when (a) the debtor was insolvent or became insolvent as a result of the transfer, or (b) the debtor reasonably should have believed that it would incur debts beyond its ability to pay as they became due. 9 V.S.A. §§ 2288(a)(2), 2289(a); 11 U.S.C. § 548(a)(1)(B)." *In re Turner & Cook, Inc.*, 507 B.R. 101, 108–09 (Bankr. D. Vt. 2014). [3]

*57 Sanford as "Debtor"*

Vermont caselaw dictates that 57 Sanford Street, LLC qualifies as a "debtor" for the purposes of determining liability under the fraudulent transfer statute. *Kindred Nursing Centers E., LLC v. Est. of Nyce* concerned an action by a nursing home against the sons of a deceased resident. The nursing home alleged the resident's sons had improperly taken money from her bank accounts and induced her to transfer her home to them so they could avoid paying for the cost of care. *Kindred Nursing Centers E., LLC v. Est. of Nyce*, "Decision on Motion to Strike or Dismiss Counterclaims," No. 5:16-CV-73, 2017 WL 11678098, at *1 (D. Vt. Nov. 7, 2017). In opposing a motion by the nursing home to amend the complaint to add a fraudulent transfer claim, one of the sons argued the elements of the claim did not exist because his mother was not a "debtor." *Kindred Nursing Centers E., LLC v. Est. of Nyce*, "Decision on Motion to Dismiss or Strike, Cross-Motion for Partial Summary Judgment, and Motion for Leave to File Second Amended Complaint," No. 5:16-CV-73, 2017 WL 2377876, at *5 (D. Vt. May 31, 2017). The court rejected this argument, and noted it resembled a previously rejected argument that there could be no fraudulent transfer because the son himself was not a debtor. Although the court agreed the presence of a "debtor" was required, it declined to adopt a narrow reading of the term:

> "This appears to be a variation on Kinsley Nyce's previous attack on the fraudulent-transfer claim on the grounds that *he* was not a debtor. The court rejected that argument, concluding that, even if Kinsley is not himself a debtor, "'he is allegedly a transferee and may be a defendant for the purposes of the fraudulent-transfer claim.'"

---

[3] It should be noted that the elements of § 2288(a)(2) differ slightly from the elements of constructive fraudulent transfer laid out in *Turner & Cook*. 9 V.S.A. § 2288(a)(2); *In re Turner & Cook, Inc.*, 507 B.R. 101, 108–109 (Bankr. D. Vt. 2014). That case compared similar state and federal fraudulent transfer statutes and leaned more heavily on the federal statute for analysis. Rather than "insolvency", one subpart of § 2288(a)(2) requires a debtor to have made a transfer without receiving reasonably equivalent value when the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction . . . ." which is also included in the federal statute. 9 V.S.A. § 2288(a)(2)(A); 11 U.S.C. § 548(a)(1)(B)(II). Under Vermont's law, insolvency is an element in determining whether an "actual intent" to defraud a creditor of the debtor exists. 9 V.S.A. § 2288(b)(9). It is also an element of § 2289, a different section of the fraudulent transfer statute. 9 V.S.A. § 2289(a).

*Estate of Nyce*, 2017 WL 2377876, FN 5 (emphasis in original).

The court found the nursing home had plausibly alleged a claim of constructively fraudulent transfer by asserting that Barbara Nyce, the mother, had transferred her home to her sons for $10, and that they knew or should have known she was about to incur substantial medical debt. *Id.* at *6. Although Kinsley Nyce was not technically the person who was liable on the nursing home's claim for his mother's unpaid expenses, his status as one of two transferees of "substantially all" of his mother's assets sufficed to qualify him as a defendant for the fraudulent transfer claim.[4] *Id.*

Although the entities at issue here include LLCs as opposed to solely individuals, the facts of this case compel a similar result. In its December 2, 2022 partial grant of summary judgment for VSECU, this court found that Ms. Currie's "application materials [filed with the Vermont Secretary of State] made clear that for all intents and purposes she and her LLCs were one and the same." Decision on VSECU Motion for Summary Judgment, filed 12/2/22, 21-CV-01732, p. 6. Eliding the distinction between Ms. Currie, 57 Sanford Street LLC, and Valley Stock Farm LLC reveals the extent of the similarities between this case and *Estate of Nyce*. The bill of sale for 57 Sanford Street, LLC (executed in November 2019) transfers "all of the assets of 57 Sanford Street, LLC" to Ms. Currie. Exhibit 27, filed 3/19/25, p. 65. It is undisputed that 57 Sanford Street, LLC, owned the property located at 57 Sanford Road, Orwell, Vermont. *Id.* When Ms. Currie conveyed the property from 57 Sanford Street, LLC to Valley Stock Farm, LLC, she essentially conveyed the property to herself, standing in the positions of both transferor and transferee. See "Reasonably Equivalent Value", *infra*; *In re Turner & Cook, Inc.*, 507 B.R. 101, 110 (Bankr. D. Vt. 2014). This exchange of value between LLCs falls under the statutory definition of "transfer" at 9 V.S.A. § 2288(15) as an indirect mode of disposing of an asset, making Ms. Currie a "transferee," and thus a defendant for the purposes of the fraudulent transfer claim. 9 V.S.A. § 2285(15); *Estate of Nyce*, 2017 WL 2377876, FN 5. It is difficult to imagine that the Legislature included such a broad definition of "transfer" in the statute only to allow liability to be evaded by simply passing property through two single-member LLCs with identical ownership.

*Piercing Corporate Veil*

But even if the Legislature had so intended, Ms. Currie could alternatively be found liable through 57 Sanford and/or Valley Stock Farm were the court to pierce the corporate veil, which appears justified in this case. Veil piercing is appropriate here because substantial evidence exists that the corporate form was being used as a "shell" in order to "perpetrate a fraud . . . ." *Winey v. Cutler*, 165 Vt. 566, 567 (1996); *Agway, Inc. v. Brooks*, 173 Vt. 259, 262 (2001). The Superior Court laid out the factors for determining whether the protections of the corporate form should be disregarded in *State v. Ruggiero*, a case involving an individual attempting to avoid the cost of complying with environmental laws by passing property through single-member LLCs. *State v. Ruggiero*, No. 470-8-14 RDCV, 2016 WL 9459780, at *1 (Vt. Super. Apr. 22, 2016). On this occasion, Ruggiero had initially acquired the property using the name of a fictitious LLC. The property then went to tax sale, and Ruggiero bought the property using a newly created, existing LLC. Ten years later, after the

---

[4] The court reached a similar result in *In re: Montagne*, finding that the wife of the president (and former officer) of a closely held corporation could be found liable for her husband's transfer of funds to her if the court decided that transfer was fraudulent, despite her argument she was not a debtor: "Since the complaint properly identifies the "debtor" and a "transfer" that clearly fall within the scope of Vermont's fraudulent transfer statute, and the **subject transfer from that debtor was to her**, the Court rejects Mrs. Montagne's argument that the statute is not a basis for granting relief to Ag Venture against her." In re Montagne, 417 B.R. 232, 242 (Bankr. D. Vt. 2009) (emphasis added).

property had become the subject of litigation in the State's Environmental Division of the Superior Court, Ruggiero transferred ownership to another existing LLC, "created specifically to hold the Property." *Id.* at *2. The court agreed with the State that the LLCs had no purpose other than to function as "alter-egos" of Ruggiero and that he should be held liable in his personal capacity. *Id.* at *3, *10. In its analysis, the court specifically pointed to the undercapitalization of the LLCs for their intended purposes and the way Ruggiero passed funds through the entities "only when needed" as signifiers of improper use of the corporate form. *Id.* at *4-*5.

Both of the signifiers from *Ruggiero* are present in this case and significantly increase the likelihood that Ms. Currie used 57 Sanford and Valley Stock Farm as alter-egos. First, both LLCs were undercapitalized for their intended purposes. In *Ruggiero*, which involved remediation of an environmentally contaminated property, the court found that "[a]dequate capitalization for this purpose would, at a minimum, include corporate ownership of assets sufficient to cover reasonably foreseeable cleanup expenses." *Id.* Neither LLC at issue in that case passed this test because the only asset they possessed (at different times) was the property that was the subject of litigation. *Id.* Here, Ms. Currie's Promissory Note establishes that the assets of 57 Sanford LLC include "the house and the harvest," and her email to VSECU shows her involvement in the hemp business and intent to "enlarge [her] business and farm." Exhibit 1, filed 3/19/25; Exhibit 27, filed 3/19/25, p. 83. As such, adequate capitalization for Ms. Currie's LLCs would entail one or both LLCs possessing assets sufficient to cover reasonably foreseeable expenses associated with a second-year hemp farming business. However, the court has not been presented with evidence that would suggest that the assets of either 57 Sanford or Valley Stock Farm ever exceeded the combined value of the property and the asserted value of the hemp crop. Answer, p. 9, Exhibit 27, filed 3/19/25, p. 79. Further, both of these assets were being used to secure Mr. Huber's loan and could not be used for other business expenses.

Second, Ms. Currie's email to VSECU and the timing of the property conveyance from 57 Sanford Street LLC to Valley Stock Farm LLC strongly indicate that she used the LLCs as entities through which to pass assets "only when needed." Exhibit 7 filed 3/19/25; Exhibit 27, p. 83. *Ruggiero*, 2016 WL 9459780, at *5. Mr. Huber wired Ms. Currie the money for the loan in October 2019. Exhibit 2, filed 3/19/25. In her July 13, 2020 email to VSECU, she notes that "the property is currently in the name of 57 Sanford St LLC and I need to change it over to Valley Stock Farm asap." Exhibit 27, p. 83. Ms. Currie did not actually convey the property to Valley Stock Farm LLC until September 23, 2020—the same day she signed the mortgage with VSCEU and nearly a year after the initial loan from Mr. Huber. Exhibit 7, p. 3, Exhibit 8, p. 1. Viewing this decision in conjunction with the LLCs' lack of assets and Ms. Currie's decision not to provide the mortgage to Mr. Huber, it appears entirely possible the reason for the transfer was to obscure the previous chain of title, which was indeed its effect.

Because the court finds this case to be an instance where piercing the corporate veil is appropriate, it does not reach the issue of whether Ms. Currie had actual or apparent authority to act on behalf of her LLCs, or whether she retroactively ratified her obligation to Mr. Huber. Opposition to Motion for Directed Verdict, p. 4; Post-Trial Brief, p. 3.

*Reasonably Equivalent Value*

*In re: Turner and Cook, Inc.*, juxtaposed Vermont's fraudulent transfer statute with the federal version and found the elements to be nearly identical. 507 B.R. 101, 108–09 (Bankr. D. Vt. 2014). In doing so, the court discussed both "reasonably equivalent value" and "insolvency." *Id.* at 109. It found that in determining reasonably equivalent value, "courts consider: (i) the market value of what was

transferred and received; (ii) whether the transaction took place at arm's length; and (iii) the good faith of the transferee." *Id*. (citations omitted). It also found that "a debtor is insolvent if the sum of its debts is greater than the value of all its assets, at a fair valuation." *Id*. (citations omitted).

The case involved constructively fraudulent transfers by the director of a high-end home construction company to himself. *Id*. at 106–107. The company, Turner and Cook ("T&C"), worked on a home for a Massachusetts couple from 2001 to 2006, when a dispute arose regarding construction costs. A state court found T&C liable for over three million dollars. *Id*. Following this verdict, the company never amended its balance sheets to reflect the debt or to repay the money owed. *Id*. The company's assets were drastically exceeded by their liability from the verdict during this period. *Id*. However, the director used T&C credit cards to pay for personal expenses that included installing a boiler in his home and making car payments. *Id*. at 107–108. He consigned $10,000 worth of company construction equipment to a vendor and kept the entirety of the proceeds. *Id*. at 113. Importantly, the director also transferred significant amounts of company property (multiple vehicles and construction equipment) to himself during this period for nominal amounts, signing the bills of sale as both buyer and seller. *Id* at 108.

The court found the company director liable under 9 V.S.A. §§ 2288(a)(2), 2289(a), and the similar federal statute. It first focused on the transfer of company vehicles from the director to himself, and found that:

> "Here, the transactions did not take place at arms' length. Instead, the Defendant **transferred the property to himself in the capacity of both buyer and seller, at a time when the Debtor's financial situation was dire**. Although the record contains no indication of the fair market value of the property, these factors alone suggest that even the agreed-upon purchase price was likely less than reasonably equivalent value."

*In re Turner & Cook, Inc.*, 507 B.R. 101, 110 (Bankr. D. Vt. 2014) (emphasis added).

The director's transfer of company property did not qualify as an exchange of reasonably equivalent value because the purchase price was substantially below market value, and the transaction did not take place at arm's length. *Id*. at 110-111. The transaction did not take place at arms' length because the director transferred T&C property to himself in a personal capacity, operating as buyer and seller. *Id*. The court found T&C was insolvent at the time of the transfers because the amount of the verdict exceeded the company's total assets. *Id*. at 111. Given these circumstances, the court also found the director should have been aware he was incurring debts he would not be able to pay as they came due. *Id*. The Court made similar findings regarding the consignment of construction property, with the only difference being the omission of the analysis of value. Since T&C had received nothing in exchange for the sale of the equipment, it was not an exchange of reasonably equivalent value. *Id*. at 114.

The evidence presented in this case demonstrates that the transfer of 57 Sanford Road from Sanford Street LLC to Valley Stock Farm LLC does not meet the test of reasonably equivalent value on two fronts. First, Ms. Currie attests to the contents of the Endless Brook LLC Company Resolution (formalizing the property transfer between the two LLCs), which states there will be "no consideration" or the value exchanged was "$0." Complaint p. 15, Exhibit E, submitted 6/28/21, 21-cv-01732. In the financial statement to VSECU applying for a loan, she represented the market value of the property at $245,000. Exhibit 27, filed 3/19/25, p. 80. Regardless of whether this represents an

accurate valuation, it is clear that an exchange for $0 would fail under the "market value" factor laid out in *Turner & Cook* for determining whether a transfer was for reasonably equivalent value. *In re Turner & Cook, Inc.*, 507 B.R. 101, 109 (Bankr. D. Vt. 2014). Second, the transaction could not have been at arms' length as required, because like in *Turner & Cook*, Ms. Currie "transferred the property to [her]self in the capacity of both buyer and seller, at a time when the Debtor's financial situation was dire." *Id*. at 110. As noted above, this court has already found that Ms. Currie identified herself with her LLCs in documentation and correspondence and that the corporate veil should be pierced to hold her personally liable for obligations incurred by her LLCs. Decision on VSECU Motion for Summary Judgment, filed 12/2/22, 21-CV-01732, p. 6. It is undisputed that at the time of the transfer, Ms. Currie (acting as 57 Sanford Street, LLC) had not repaid the loan to Mr. Huber. Thus, she was standing in the position of both buyer and seller while the debtor's financial situation was dire, and the transaction also fails this test.

*Remaining Assets of Debtor Unreasonably Small in Relation to Business/Insolvency*

Having established that 57 Sanford Street LLC was a "debtor" under Vermont's fraudulent transfer statute and that the transfer of 57 Sanford Road was made without receiving equivalent value in exchange, the final question concerns § 2288(a)(2) (A) and (B). Ms. Currie may be found liable for constructive fraudulent transfer if the evidence shows that she either: 1) intended to or believed she would incur debts beyond her ability to pay at the time of the transfer, or 2) that she "was engaged or about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction." 9 V.S.A. § 2288(a)(2)(A). If this element can be shown in conjunction with the others, no showing of intent is required. This was the case in *Ruggiero*:

> "9 V.S.A. § 2288(a)(2), on the other hand, requires no finding of actual fraudulent intent . . . It is clear . . . from undisputed facts that Second City LLC made the transfers without receiving a reasonably equivalent value in exchange for the transfers, and was engaged in a business for which its remaining assets were unreasonably small in relation to the business. This is all that is necessary to render the transfers fraudulent as to creditors under 9 V.S.A. § 2288(a)(2)."

*State v. Ruggiero*, 2016 WL 9459780, at *10.

In her July 13 emails with VSECU, Ms. Currie notes that the property is in the name of 57 Sanford Street, LLC, but that she plans to transfer it to Valley Stock Farm LLC as soon as possible. Exhibit 27, filed 3/19/25, p. 83. She lists her total assets at $490,000 (including the subject property at $250,000), with a debt of $40,000. Her assets include the property, automobiles, hemp harvesting equipment, and hemp plants. *Id*. at 79. In the corresponding business loan application, also dated for July 13, she represents that she can secure the loan with $450,000 worth of collateral, including "All business assets", "Real Estate", "Accounts receivable/inventory", and "Machinery, equipment or vehicle." *Id*. at 81. The owner of the collateral is listed as Valley Stock Farm, LLC. *Id*. In conjunction with her statements regarding transfers of the property, there can be no doubt that Ms. Currie transferred everything once owned by 57 Sanford Street to Valley Stock Farm. As such, there can also be no doubt that this transfer left 57 Sanford Street LLC—the debtor—with no capital. Further, the language of the email shows Ms. Currie to be actively engaged in the hemp cultivation business at the time of her correspondence with VSECU. See, e.g. ("I'm looking to build a relationship with a bank so I can enlarge my business and farm"; "this is my second year growing flower . . . .") *Id*. at 83. Thus,

for Ms. Currie to avoid liability under the fraudulent transfer statute, 57 Sanford Street LLC would have to possess sufficient capital after the transfer of the property and harvest for it to be reasonable for the LLC to engage in the business of hemp cultivation. 9 V.S.A. § 2288(a)(2)(A). No scenario exists in which it would be reasonable for an entity with no assets to engage in the hemp cultivation business. As such, Ms. Currie must be found liable under Vermont's fraudulent transfer statute.

<u>Priority of VSECU and Mr. Huber's Interests</u>

On December 2, 2022, this court partially granted summary judgment in favor of VSECU on their claim that their interest in the 57 Sanford Road took priority over Mr. Huber's. Decision on VSECU Motion for Summary Judgment, p. 7. On October 23, 2023, Mr. Huber acknowledged that "to the extent the Court nullifies the fraudulent conveyance from 57 Sanford Street LLC to Valley Stock Farm LLC . . . VSECU's interest would remain unaffected." Response to VSECU's Motion for Summary Judgment, filed 10/23/2023. Given that the court has found the transfer from 57 Sanford Street LLC to Valley Stock Farm to be fraudulent and VSECU's mortgage to be superior, any interest in the property going forward will be encumbered by VSECU's mortgage.

<u>Attorney's Fees and Punitive Damages</u>

Mr. Huber has requested the court award him attorney's fees and punitive damages due to allegedly "morally culpable" conduct by Ms. Currie. Complaint, p. 5.

*Estate of Nyce* traces the history of the Supreme Court's treatment of attorney's fees in Vermont. It notes there is a "bad faith" exception to the State's usual practice of requiring "each party [to bear] the cost of its own attorney's fees absent a statutory or contractual provision authorizing an award of attorney's fees." *Estate of Nyce*, 2017 WL 2377876, at *4 (quotation omitted); *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 76, 179 Vt. 167. It outlines two approaches: the *Albright* approach, which does not apply to parties to a contract in privity, and the *Gadhue* approach, which includes "'situations where the bad faith action of one person caused another person to incur litigation expenses in unnecessary judicial proceedings with the wrongful actor.'" *Nyce* at *4–*5(quoting *Town of Milton Board of Health v. Brisson*, 2016 VT 56, ¶ 29). In *Monahan v. GMAC Mortgage Corp.*, the Court further defined the contours of the *Gadhue* exception to Vermont's approach to attorney's fees. 2005 VT 110, ¶ 27, 179 Vt. 167. It noted a distinguishing feature of that case was that the "'litigant was compelled to appear twice before the state supreme court in order to obtain relief which should have been forthcoming after the first appearance.'" *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 77, 179 Vt. 167 (quoting *Appeal of Gadhue*, 149 Vt. 322, 328 (1987).

For an award of punitive damages, two elements must be shown: 1) "wrongful conduct that is outrageously reprehensible"; and 2) "malice, defined variously as bad motive, ill will, personal spite, hated, reckless disregard, and the like." *Fly Fish Vermont, Inc. v. Chapin Hill Ests., Inc.*, 2010 VT 33, ¶ 18, 187 Vt. 541. The Supreme Court is clear that malice means something "more reprehensible than simply wrongful or illegal conduct" and that "there must be some showing of bad motive to make knowing and intentional conduct malicious." *Id*. at ¶ 25, *Brueckner v. Norwich Univ.*, 169 Vt. 118, 131 (1999) (quotation omitted).

In this case, 9 V.S.A. § 2288 is silent on the subject of attorney's fees, as is the Promissory Note that serves as the contract between the two parties. 9 V.S.A. § 2288; Exhibit 27, p. 38. Both parties were privy to the contract, so the *Albright* exception does not apply. *Id*.; *Estate of Nyce* at *5.

Moreover, the court has not been presented evidence of the type of bad faith present in *Gadhue*. Both parties have made good faith arguments before this court and demonstrated sincerity in their claims. At most, circumstantial evidence has been presented that raises the possibility of bad faith action, but falls short of conclusive proof. Similarly, there has been no showing of malice to accompany the acknowledged wrongful conduct as would permit an award of punitive damages.

As such, the court declines to award attorney's fees or punitive damages based on the merits of the evidence presented. Additionally, neither party raised the issue of attorney's fees or punitive damages aside from a mention in Mr. Huber's initial complaint. Complaint, p. 5. Four years and multiple summary judgments have passed since that filing was submitted. The court's reasons for alternatively declining to consider attorney's fees or punitive damages on procedural grounds resemble the logic behind Ms. Currie's waiver of the defense of usury. If a party initially raises an issue (such as a claim for punitive damages) and does not raise it again and provide support in subsequent pleadings, the court will not punish the other party for assuming their opponents have dropped the issue. Had Ms. Currie been made aware through subsequent pleadings that Mr. Huber was continuing to pursue attorney's fees and punitive damages, she could have mounted arguments and presented evidence to the contrary. That she did not do so appears to be a rational response to the fact that it did not appear in later motions for summary judgment, the oppositions to her motions to vacate and direct a verdict, or the post-trial briefings.

## Order

The motion to vacate is DENIED.

The motion for a directed verdict is DENIED.

The court finds the transfer from 57 Sanford Street, LLC to Valley Stock Farm, LLC to be fraudulent. That transfer is hereby voided.

Judgment is entered for plaintiff Christopher Huber against Defendants for $185,000, the amount due under the Note, plus his costs.

An equitable lien is imposed on the premises at 57 Sanford Road, Orwell, Vermont in favor of plaintiff Christopher Huber as of October 25, 2019, superior to the interests of Defendants but inferior to Vermont State Employees Credit Union.

Plaintiff shall prepare and submit a proposed judgment order.

**Signed electronically July 14, 2025 pursuant to V.R.E.F 9(d).**

_____
**David Barra**
**Superior Court Judge**